

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1997

# Lambert v. Blackwell

Precedential or Non-Precedential:

Docket 97-1281,97-1283,97-1287

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Lambert v. Blackwell" (1997). *1997 Decisions.* Paper 282.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/282

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 29, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-1281, 97-1283 and 97-1287

LISA MICHELLE LAMBERT

v.

CHARLOTTE BLACKWELL, MRS., SUPERINTENDENT;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA,

     Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 96-cv-06244)

Argued
October 21, 1997

Before: MANSMANN and GREENBERG, Circuit Judges ,
and ALARCON, Circuit Judge.*

(Filed December 29, 1997)

_____

*Honorable Arthur L. Alarcon of the United States Court of Appeals for
the Ninth Circuit, sitting by designation.

Peter S. Greenberg, Esquire
 (ARGUED)
Christina Rainville, Esquire
Jeannette M. Brian, Esquire
Diane L. Lisowski, Esquire
Schnader, Harrison, Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

 COUNSEL FOR APPELLEE

Richard A. Sprague, Esquire
 (ARGUED)
Geoffrey R. Johnson, Esquire
Theodore J. Chylack, Esquire
Joseph R. Podraza, Jr., Esquire
T. Truxtun Hare, Esquire
David S. Lubin, Esquire
Deborah B. Miller, Esquire
Sprague & Sprague
Suite 400, Wellington Bldg.
135 South 19th Street
Philadelphia, PA 19103

Richard A. Sprague, Esquire
Alvin B. Lewis, Jr., Esquire
Edward R. Kennett, Esquire
Sprague & Lewis
The Christopher DeMuth Bldg.
116 East King Street
Lancaster, PA 17602

 COUNSEL FOR APPELLEES

2

D. Michael Fisher
 Attorney General of Pennsylvania
Jerome T. Foerster
 Senior Deputy Attorney General
 Appeals and Legal Services Section
Robert A. Graci
 Assistant Executive Deputy
Attorney General
Office of Attorney General of
 Pennsylvania
Law and Appeals
16th Floor, Strawberry Square
Harrisburg, PA 17120

Daniel E. Lungren
Attorney General of California
1300 I Street, Suite 125
Sacramento, CA 95814

M. Jane Brady
Attorney General of Delaware
820 North French Street
Wilmington, DE 19801

Richard P. Ieyoub
Attorney General of Louisiana
P.O. Box 94095
Baton Rouge, LA 70804-9095

W.A. Drew Edmondson
Attorney General of Oklahoma
2300 North Lincoln Boulevard,
 Suite 112
Oklahoma City, OK 73105-4894

Charles M. Condon
Attorney General of South Carolina
P.O. Box 11549
Rembert C. Dennis Building
Columbia, SC 29211-1549

 COUNSEL FOR AMICUS
APPELLANTS: COMMONWEALTH
OF PENNSYLVANIA, STATE OF
CALIFORNIA, STATE OF
DELAWARE, STATE OF
LOUISIANA, STATE OF
OKLAHOMA, STATE OF
SOUTH CAROLINA

Donna G. Zucker
 Assistant District Attorney
Ted McKnight
 President, Pennsylvania District
Attorneys Association
1421 Arch Street
Philadelphia, PA 19102-1582

 COUNSEL FOR AMICUS CURIAE
PENNSYLVANIA DISTRICT
ATTORNEYS ASSOCIATION

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal we are faced with the onerous task of determining whether the district court, upon petition for writ of habeas corpus, erred in granting the unconditional release of one convicted of first degree murder by a state trial judge. Under Rose v. Lundy, 455 U.S. 509, 522 (1982), the district court is required to dismiss a federal habeas petition filed pursuant to 28 U.S.C. S 2254 which contains both unexhausted and exhausted claims. Because wefind the petitioner has not yet pursued her remedies under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. S 9542 et seq. (West 1997 Supp.), her federal habeas

petition includes unexhausted claims and, hence, the result here is dictated by Rose v. Lundy, supra . Thus, we will remand this case to the district court with an order to dismiss the petition without prejudice so that the petitioner can first present her unexhausted claims to the appropriate Pennsylvania state court.

I.1

Laurie Show became romantically involved with Lisa Lambert's boyfriend, Lawrence "Butch" Yunkin, for a brief period in June of 1991. Thereafter, Show incurred the wrath of Lambert, who accosted Show on several occasions. On the morning of December 20, 1991, Show was brutally murdered. Lambert and an accomplice, Tabitha Buck, were subsequently charged with criminal homicide for the murder of Show.2 Buck was convicted of second degree murder by a jury of her peers; Yunkin, in exchange for his truthful testimony against Lambert, pled guilty to hindering apprehension.3

_____

1. We note, as a preliminary matter, that Lambertfiled a motion to dismiss this appeal on the basis that since the district court found she was actually innocent of first degree murder, the Double Jeopardy Clause of the Fifth Amendment bars the Commonwealth's appeal. By separate order, we will deny this motion. As we make clear in this opinion, the district court erred in reaching the issue of Lambert's actual
innocence. Accordingly, we do not give weight to the district court's factual findings in this appeal. Moreover, we are plainly authorized to review the final order of the district court in a habeas case pursuant to 28 U.S.C. S 2253(a). Furthermore, a finding of actual innocence, as that term has come to be used in federal habeas corpus jurisprudence, is not the equivalent of a finding of not guilty by a jury or by a court at a bench trial. We find, therefore, that the Double Jeopardy Clause does not bar the Commonwealth's appeal.

2. At the time of her arrest, Lambert was six months pregnant with Yunkin's child.

3. Several weeks after Lambert's murder trial was concluded; the Commonwealth determined that Yunkin had perjured himself at Lambert's trial. Consequently, Yunkin breached the plea agreement and the Commonwealth charged him with third degree murder to which he pled nolo contendere.

On July 20, 1992, after a seven-day bench trial in the
Court of Common Pleas of Lancaster County, Pennsylvania,
Lambert was convicted of first degree murder and criminal
conspiracy. Subsequently, Lambert was sentenced to life
imprisonment by the trial court. Lambert, through her trial
counsel, Roy Shirk, Esq., filed a Motion in Arrest of
Judgment and for New Trial, and Additional Reasons for
Post-Trial Motions, raising various allegations of trial error
and prosecutorial misconduct.[4] On July 19, 1994, the trial
court issued an Opinion and Order denying Lambert's post-
trial motions. No appeal was taken from this order.

---

4. The issues raised in the first set of post-verdict motions filed by Roy
Shirk, Esq., included:

> Error to deny defendant's motion for change of venue;

> Error to deny defendant's motion for sanctions;

> Error to allow Tabitha Buck's statement into evidence;

> Error to allow the trier of fact to take notes during trial and
> potentially to use them during deliberation;

> Error to affirm and read the Commonwealth's points of charge Nos.
> 3 and 4;

> Error not to grant a mistrial when the request for supplemental
> discovery of Laura Thomas was not granted;

> Error not to grant a mistrial when the request for supplemental
> discovery of Hazel Show was not granted;

> Error not to grant a mistrial when the request for supplemental
> discovery of Richard Kleinhans was not granted;

> Error not to grant a mistrial when the prosecution withheld
evidence
> that a jergo was discarded and that they were aware of its
location;

> Error to qualify Dr. Penades as an expert in forensic pathology
since
> he was not board certified;

> Error not to grant a mistrial when the prosecution withheld from
> discovery a portion of Yunkin's statement of February 4, 1992;

> Error not to grant a mistrial when the Assistant District Attorney
> asked witness Samuel J. Golub two questions beyond his area of
> expertise; and

Insufficient evidence existed to sustain the verdict.

Subsequently, Lambert, through new counsel, Jules Epstein, Esq., filed a Motion for a New Trial based on allegations of after-discovered evidence[5] and ineffective assistance of trial counsel.[6] An evidentiary hearing on the new motion was conducted over a two-day period in November of 1994. On March 14, 1995, the state trial court denied Lambert's motion for post-verdict relief. In June of 1995, Lambert appealed the judgment of sentence imposed by the state trial court to the Superior Court of Pennsylvania, raising essentially the same claims regarding ineffective assistance of trial counsel and after-discovered evidence.[7] A three-judge panel of the Superior Court of Pennsylvania affirmed the judgment of sentence on January 4, 1996. In her direct appeal to the Pennsylvania Supreme Court filed on February 2, 1996, Lambert again raised the same claims.[8] Lambert's petition for allowance of appeal

_____

5. The after-discovered evidence consisted of the testimony of Yunkin in a court proceeding subsequent to Lambert's trial in which he stated he was aware of the plans to harm Laurie Show; and, Yunkin's admission of his involvement in the murder during the plea colloquy, which also took place subsequent to Lambert's trial, resulting in a plea of nolo contendere to third degree murder.

6. Lambert alleged trial counsel was ineffective in failing to present evidence of good character/reputation; failing to present evidence and witnesses to substantiate her testimony that she had been physically and psychologically abused by Yunkin; failing to produce evidence that Commonwealth witness Laura Thomas was on juvenile probation which was crucial to the credibility determination; presenting a witness who testified that Laurie Show's claim of date rape against Yunkin was false; failing to present evidence of bad reputation for the veracity of witness Laura Thomas; failing to move to suppress Lambert's inculpatory statement to the police; failing to seek a new trial based upon new evidence of Yunkin's nolo contendere plea to third degree murder; and, in failing to impeach Yunkin with his statements to the police that he knew of the plan to harm the victim before he dropped Lambert and Buck off at Show's condominium.

7. In her appeal to the Pennsylvania Superior Court, Lambert argued her counsel was ineffective for failing to introduce evidence of her good character and of the abuse inflicted upon her by Yunkin; Lambert also raised the after-discovered evidence of Yunkin's breach of his plea agreement and perjury.

8. See note 7, supra.

7

was subsequently denied on July 2, 1996. Lambert did not seek collateral review of any of her claims through the Pennsylvania Post-Conviction Relief Act.

Lambert instituted the present federal habeas corpus action by filing a pro se writ of habeas corpus on September 12, 1996. The district court subsequently appointed counsel to represent Lambert and directed counsel to file an amended petition, which they did on January 3, 1997. Lambert's first amended petition for writ of habeas corpus incorporated the claims previously presented to the state courts, but went further, advancing the following grounds for relief: (1) Lambert was actually innocent and no credible evidence supported the prosecution's theory of her guilt or the findings of the state trial court; (2) the misconduct[9] of the prosecution and the police created a situation of manifest injustice; (3) after-discovered evidence[10] created manifest injustice; and, (4) trial counsel was ineffective in over 35 separate ways. In its Answer to the First Amended Petition, the Commonwealth responded that Lambert was not entitled to federal review at this time since she had failed to exhaust her state court remedies and had committed insurmountable procedural default. In the alternative, the Commonwealth argued that Lambert's petition should be denied on the merits. Further,

_____

9. The alleged misconduct includes altering Lambert's statement to the police; creating a false crime scene photograph to discredit her; knowingly presenting perjured testimony and failing to take remedial measures after the perjury was confirmed; knowingly presenting "expert" testimony that was scientifically incredible while tampering with the defense's expert; altering evidence and witness statements; failing to disclose Brady and Giglio evidence; and "losing" other exculpatory evidence.

10. The after-discovered evidence allegedly consists of alterations of Lambert's statement; alteration of crime scene evidence; scientific testing
of clothing worn by Yunkin; photographs of the crime scene which revealed additional writing in blood by the victim that exculpates Lambert; autopsy report notes revealing the time of the victim's death; injuries incurred by the "real" killers, Yunkin and Buck; testing of blood found on the victim's ring; statements made by Yunkin and Buck to their friends; and, the subsequent admission by the prosecution that the primary witness against Lambert--and one of the"real" killers--had committed perjury at Lambert's trial.

8

the Commonwealth expressly stated in its Answer that it was not waiving the exhaustion requirement in any manner.[11]

Despite the Commonwealth's objections to Lambert's petition on the grounds of exhaustion and procedural default, the district court determined that it would allow broad discovery and would conduct an evidentiary hearing on Lambert's claims of actual innocence and prosecutorial misconduct while, at the same time, considering the Commonwealth's procedural claims of exhaustion and procedural default. The district court denied the Commonwealth's objection that the evidentiary hearing was prohibited by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. S 2241 et seq., citing the highly unusual circumstances of this case. The evidentiary hearing commenced on March 31, 1997, and, after fourteen days of testimony, the district court entered an order granting the writ, releasing Lambert from custody, and barring the Commonwealth from conducting a retrial of Lambert.

The district court issued its Order and Memorandum Opinion on April 21, 1997.[12] Lambert v. Blackwell, 962 F.Supp. 1521 (E.D. Pa. 1997). The court found that the 1995 amendment to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann.S 9543, which eliminated the waiver exception for actual innocence or procedural default (former sections 9543(a)(3)(ii) and (iii)), left Lambert without a state forum in which to raise her claims of error. The district court interpreted the Pennsylvania legislature's elimination of the actual

_____

11. The district court found, however, that the Commonwealth waived its exhaustion and procedural default arguments at the evidentiary hearing when counsel stated that relief was "warranted" in this case. N.T. at 2703, April 16, 1997. In so holding, the district court did not recognize that the Commonwealth withdrew this concession the very next day. In any event, the Commonwealth maintains that any acquiescence it may have made regarding relief did not result in an express waiver of the exhaustion issue. See also note 28, infra.

12. In finding that Lambert was actually innocent of the murder of Laurie Show, the district court did not address the third and fourth grounds raised in Lambert's habeas petition regarding after-discovered evidence and ineffective assistance of counsel.

innocence and procedural default exceptions to waiver "as an advertent decision after the Supreme Court's decision in Schlup [v. Delo, 513 U.S. 298 (1995),] to place those issues squarely into the federal forum." Lambert, 962 F.Supp. at 1553. Thus, the district court concluded that Lambert exhausted all of the claims presented in her federal habeas proceeding, with the exception of the after-discovered evidence which "expand[ed] the degree of the violations" brought to the attention of the state trial judge or confirmed Lambert's contention that she is actually innocent. Id.

The court further opined that to the extent there may be claims which a Pennsylvania court might view as not being waived, the state proceedings would be ineffective to protect Lambert's rights if the district court dismissed the petition. Id. at 1554. Moreover, the court found that if it were to dismiss this case as a mixed petition pursuant to Rose v. Lundy, supra, "on the suspicion that perhaps its reading of the PCRA was wrong," then Lambert would be deemed to have taken her one bite of the apple under the AEDPA. Id. Consequently, in order for Lambert to return to federal court, the district court opined, she would need the approval of the court of appeals and denial of such application was unreviewable by the Supreme Court. The district court felt that under these extraordinary circumstances, such a result was constitutionally intolerable.13 Id.

Finally, the district court explained that in such an extraordinary case, the principles of comity allowed it to excuse total exhaustion or procedural default in the face of a manifestly unjust incarceration.14 Id. In any event, the

_____

13. Subsequent to the issuance of the district court's opinion, we decided Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997), holding that "when a prior petition has been dismissed without prejudice for failure to exhaust state remedies, [authorization from the court] is [not] necessary and the petitioner may file his petition in the district court as if it were the first
such filing."

14. At a status conference held on February 13, 1997, prior to the evidentiary hearing, the court, after articulating its concerns with the exhaustion issue, opined that the better approach was to analyze the petitioner's claims under the doctrines of actual innocence and manifest

10

court found that the Commonwealth's concession at the evidentiary hearing that Lambert was entitled to some relief effected a waiver of the exhaustion objection.

The Commonwealth filed a timely notice of appeal on April 22, 1997. We have jurisdiction over this appeal pursuant to 28 U.S.C. SS 1291 and 2253.15 In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings. Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992) (citing Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989)).

II.

We note at the outset that the parties do not dispute that Lambert's petition includes claims which were not presented to the state court.16 Unlike the district court, however, we cannot dispense with consideration of the exhaustion and procedural default claims in favor of reaching the merits of Lambert's claim of actual innocence.17

_____

injustice based upon prosecutorial misconduct, which are derived from the Due Process Clause and not from any statute (such as the PCRA). The district court thus intimated that it was avoiding the exhaustion issue by proceeding to a due process analysis. The court further stated that while it agreed with the general requirements of the AEDPA regarding evidentiary hearings and unexhausted claims, this case involved highly unusual circumstances and, thus, those provisions did not apply.

15. Because the Commonwealth has taken the appeal in this proceeding, a certificate of appealability is not required as a prerequisite to our exercising appellate jurisdiction. Fed. R. App. P. 22(b).

16. Lambert argues in her brief, however, that since she has waived the non-exhausted claims in state court, she has thus exhausted her state remedies. As explained below, we do not agree with Lambert that the non-exhausted claims were necessarily waived in state court.

17. We recognize that a panel of this court, on a motion by the respondents for a stay of Lambert's release pending the appeal, concluded that the respondents failed to show that they were likely to succeed in their argument that the petition should be denied because of Lambert's failure to exhaust her state court remedies. Of course, that

11

Rather, we find that Supreme Court precedent and the AEDPA mandate that prior to determining the merits of her petition, we must consider whether Lambert is required to present her unexhausted claims to the Pennsylvania courts. We turn, therefore, to a discussion of exhaustion of state claims under the AEDPA.

A.

It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus filed by a person incarcerated from a judgment of a state court unless the petitioner has first exhausted the remedies available in the state courts. 28 U.S.C. S 2254(b)(1)(A); Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993). The exhaustion requirement is excused, however, where no available state corrective process exists or the particular circumstances of the case render the state process ineffective to protect the petitioner's rights. 28 U.S.C. SS 2254(b)(1)(B)(I) and (ii). A petitioner will not be deemed to have exhausted the available state court remedies so long as she has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. S 2254(c). A petitioner who has raised an issue on direct appeal, however, is not required to raise it again in a state post-conviction proceeding. Evans v. Court of Common Pleas, Delaware County, Pennsylvania, 959 F.2d 1227, 1230 (3d Cir. 1992) (citing Swanger v. Zimmermann, 750 F.2d 291, 295 (3d Cir. 1984)). Thus, the federal habeas claim must have been "fairly presented" to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts. Id. at 1231 (citations omitted). In addition, the state court

_____

inherently tentative conclusion, based on a record less complete than that before us and not reached after the opportunity for the intensive study available to a merits panel, is not binding on this panel. See Third Circuit I.O.P. 9.1 (only the holding of a panel in a published opinion is binding on subsequent panels). See also United States v. Houser, 804 F.2d 565, 568 (9th Cir. 1986). In any event, the motions panel did not preclude the respondents from raising the exhaustion issue. Rather, it merely opined that they were not likely to succeed on it. In fact, upon fuller presentation and consideration, they have succeeded.

12

must have available to it the same method of legal analysis as that to be employed in federal court. Id. The habeas petitioner carries the burden of proving exhaustion of all available state remedies. Toulson, 987 F.2d at 987. The exhaustion requirement does not foreclose federal relief, but merely postpones it. Id. at 986.

The Supreme Court has made clear that a section 2254 petition which includes unexhausted as well as exhausted claims, i.e., a mixed petition, must be dismissed without prejudice. Rose v. Lundy, 455 U.S. 509, 522 (1982). In reaching this conclusion, the Court analyzed the policies underlying section 2254 since it found that Congress's intent was unclear from the statute or legislative history. Id. at 516-17. In endorsing rigorous enforcement of the total exhaustion rule, the Court acknowledged the preference among federal jurists to allow state courts the initial opportunity to review and correct alleged violations of federal constitutional rights. This preference is derived from principles of comity.18 Id. at 518. The Court further noted that adoption of a total exhaustion rule causes a reduction in piecemeal litigation, thereby increasing the likelihood that all claims will be reviewed in a single proceeding. Id. at 520. Finally, the Court observed that the prisoner's interest in obtaining speedy relief in federal court on his claims would not be unreasonably impaired by requiring total exhaustion. Id. at 520-22. Thus, Lundy teaches that if the petitioner fails to satisfy the exhaustion requirement prior to filing a federal habeas petition and none of the exceptions apply, the federal court is precluded from granting habeas relief to the petitioner.

_____

18. The doctrine of comity " `teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' " Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Indeed, we opined in Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), that requiring exhaustion of state remedies "addresses federalism and comity concerns by `afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.' " (Citations omitted.)

13

Five years later, the Supreme Court handed down its decision in Granberry v. Greer, 481 U.S. 129 (1987). In Granberry, the district court had dismissed the federal habeas petition upon the state's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When the petitioner appealed, the state for the first time interposed the defense that the petitioner had not exhausted his state remedies. The petitioner responded by arguing that the state waived this defense by failing to raise it in the district court. The Supreme Court granted certiorari to consider whether the state's failure to raise the exhaustion defense in the district court constituted a waiver of that claim in the court of appeals. 481 U.S. at 130.

The Court held in Granberry that where the state has failed to raise, in the district court, an arguably meritorious nonexhaustion defense, through inadvertence or otherwise, the court of appeals may appropriately examine the nonexhaustion issue anew. Id. at 134. In determining whether the interests of comity and federalism were better served by addressing the merits despite non-exhaustion, the Supreme Court delineated the following standard:

> If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court . . . .

Granberry v. Greer, 481 U.S. at 134-35. Thus, we learn from Granberry that where a state fails to raise a nonexhaustion defense in the district court, courts of appeals should consider whether, under the particular facts and circumstances presented, the interests of justice would

be served by addressing the merits of the habeas petition if it is clear the petitioner has failed to state a colorable federal claim, or by requiring exhaustion. Id. at 136. We emphasize, however, our previous holding that Granberry applies to "any claim before the court of appeals for which the state neglected to raise non-exhaustion in the district court." Keller v. Petsock, 853 F.2d 1122, 1128 n.6 (3d Cir. 1988). Clearly that is not the case before us. The Commonwealth has aggressively asserted the nonexhaustion defense first in the district court and now on appeal. Indeed, in our most recent decisions applying Granberry, the state had failed to raise the nonexhaustion defense in the district court. See, e.g. , Smith v. Horn, 120 F.3d 400 (3d Cir. 1997); Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227 (3d Cir. 1992); Keller v. Petsock, supra.

Significantly, two changes in the federal habeas statute are derived from the Supreme Court's decision in Granberry. First, under the AEDPA, a district court may no longer infer that a state has waived the nonexhaustion defense from its failure to invoke the defense expressly. Gaylor v. Harrelson, 962 F.Supp. 1498, 1499 & n.2 (N.D. Ga. 1997). The revised statute now requires an express waiver through counsel in order for the state to have waived the nonexhaustion defense. 28 U.S.C. S 2544(b)(3). Second, the AEDPA, in 28 U.S.C. S 2544(b)(2), codifies the holding in Granberry by conferring upon the district court the authority to deny a habeas petition on the merits despite the petitioner's failure to exhaust state remedies. Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied, ___ U.S. ___, 118 S.Ct. 126 (1997) (emphasis added). Standing alone, section 2544(b)(2) does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion. Id. Thus, the court of appeals in Hoxsie read section 2544(b)(2) in conjunction with Granberry. We read the Granberry test as whether "it is perfectly clear that the applicant does not raise even a colorable federal claim." 481 U.S. at 135.

We cannot say that it is perfectly clear that Lambert has not raised a colorable federal claim. The district court obviously found substantial merit to Lambert's claims of

15

actual innocence and prosecutorial misconduct. These claims present unresolved questions of fact and of state law and, thus, the interests of comity and justice are better served by requiring complete exhaustion.

We note that section 2544(b)(2) does not provide the district court with the authority to grant relief on the merits where the petitioner fails to exhaust state remedies. Thus, a strict reading of the statute compels us to conclude that if a question exists as to whether the petitioner has stated a colorable federal claim, the district court may not consider the merits of the claim if the petitioner has failed to exhaust state remedies and none of the exceptions set forth in sections 2544(b)(1)(B)(I) and (ii) applies. Lambert argues, in contrast, that Granberry establishes that where the district court has held a full trial and found a miscarriage of justice, a failure to exhaust is excused. We disagree. The particular language in Granberry to which Lambert refers states:

> [I]f a full trial has been held in the district court and it is evident that a miscarriage of justice has occurred, it may also be appropriate for the court of appeals to hold that the nonexhaustion defense has been waived in order to avoid unnecessary delay in granting relief that is plainly warranted.

481 U.S. at 135. We note that, unlike in Granberry, the state has not waived the nonexhaustion defense. Second, the AEDPA now explicitly requires an express waiver by the state before waiver will be deemed to have occurred. Moreover, to accept Lambert's argument would require that we view Granberry as authorizing a district court to waive the nonexhaustion defense even though the state has aggressively asserted that defense at all stages of the proceedings. This conclusion is irreconcilable, not only with the express waiver provision in section 2544(b)(3), but also with common sense. The quoted passage from Granberry only has meaning when placed in the context of a case in which the state failed to raise the nonexhaustion defense before the district court. Given the new express waiver requirement of the AEDPA, it is doubtful that Granberry continues to have any import in a situation other than where the state has expressly waived the nonexhaustion

16

defense. We need not answer this question, however, as the resolution of the case before us does not require it.

For these reasons, we also reject Lambert's contention that exhaustion is excused based on the "special circumstances rule" derived from Supreme Court jurisprudence, specifically Granberry v. Greer , supra, and Frisbie v. Collins, 342 U.S. 519 (1952).[19] We agree with the Commonwealth that Granberry relates only to the special circumstance of the prosecution never having raised the exhaustion defense prior to appeal so that the Supreme Court permitted the court of appeals to rule on the merits of the petition. After enactment of the AEDPA in 1996, 28 U.S.C. S 2254 imposes a duty on the courts to examine the exhaustion issue and to reject a petition if it raises unexhausted claims.

Lambert's reliance on Frisbie v. Collins, supra, is likewise misplaced, as that decision does not support a finding of exceptional circumstances here.[20] In Frisbie, the Supreme Court reiterated the general rule that the presence of special circumstances will excuse non-exhaustion. 324 U.S. at 520-21. Whether such circumstances exist is to be determined by the district court conducting a factual appraisal in each particular case. Id. at 521. The Court refused to discuss the special circumstances found by the

_____

19. Lambert maintains before us that since she has either raised or waived all of her claims in state court, she did exhaust her state remedies. Lambert is equating exhaustion with waiver, however, in that she argues that since the unexhausted claims have been waived under Pennsylvania law, after the 1995 amendments to the PCRA, she is without a mechanism for post-conviction relief. This argument cannot form the basis of a "special circumstance" excusing her failure to exhaust since, as we find infra, that review of her unexhausted claims is not clearly foreclosed under Pennsylvania law.

20. The Commonwealth submits that the so-called "special circumstances" exception of Frisbie v. Collins, supra, upon which Lambert relies to excuse nonexhaustion, "is so ill-defined that it must be considered sui generis" and, in any event, did not survive the AEDPA amendments to the federal habeas corpus statute. The Commonwealth describes Frisbie as "a case notably lacking in guidance on the parameters of the [special circumstances] exception." We agree with the Commonwealth's analysis of Frisbie.

17

court of appeals for the reason that the circumstances were so peculiar to the case that "a discussion of them could not give precision to the `special circumstances' rule."21 Id. at 522.

Recently, we considered the section 2544 exhaustion requirement with regard to a mixed petition where, as here, the state asserted the nonexhaustion defense in the district court. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997). Acknowledging the Supreme Court's strong presumption in favor of exhaustion, we also recognized that "in rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim." Id. at 206-07 (citations omitted). We explained that such circumstances exist where "state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised, or where exhaustion in state court would be `futile.' " Id. at 207 (citations omitted). Applying this principle in Christy, we declined to find an exceptional circumstance which would excuse nonexhaustion. We found the mere risk that the state courts would not stay the petitioner's execution while his federal constitutional claims are being litigated did not amount to an "unusual circumstance." The more appropriate inquiry, we found, was to focus on the actuality that state courts will refuse to stay an execution while federal claims are pending. Id.

Applying our holding in Christy to Lambert's petition, we turn our attention to the actuality that the state courts would refuse to entertain Lambert's claims. As we discuss below, we cannot say with certainty that state review of Lambert's claims is precluded. Absent clear preclusion, we do not find any exceptional circumstances which would warrant consideration of Lambert's unexhausted claims in federal court.

_____

21. The petitioner in Frisbie v. Collins alleged that the complaint in the state court action was defective and, consequently, a faulty warrant was issued for his arrest. He further contends that he was subsequently kidnaped by Michigan police in Chicago and brought back to Michigan for trial in violation of federal constitutional and statutory law. 324 U.S.
at 521 n. 5.

18

Our conclusion is further buttressed by the holding of our sister court of appeals in O'Guinn v. Dutton , 88 F.3d 1409 (6th Cir. 1996), cert. denied, #6D6D 6D# U.S. ___, 117 S.Ct. 742 (1997). There the unexhausted claim involved allegations of prosecutorial misconduct stemming from Brady violations. The court of appeals found that the state courts had an important interest in reviewing a serious constitutional claim involving the conduct of a state prosecutor in withholding evidence in a state trial in which the defendant was prosecuted for a violation of state law. Id. at 1412. Accordingly, the court held that the "interests of justice and comity [did] not weigh in favor of having [the federal court] decide the question." Id.  at 1413. Having found that the case did not present any unusual or exceptional circumstances, the court concluded that the state courts should address the prosecutorial misconduct claim in the first instance. Id.

In contrast, we find that the cases cited by Lambert, Evans v. Court of Common Pleas, supra, and Moore v. DeYoung, 515 F.2d 437 (3d Cir. 1975), do not support her argument that special circumstances exist which would excuse exhaustion. It is true that in Evans we held that "[e]xhaustion is not a jurisdictional requirement, but rather a rule of comity, and a federal court may in certain circumstances decide the merits of a claim despite non-exhaustion." 959 F.2d at 1231. We elaborated on the circumstances which would support non-exhaustion: where the petitioner has no opportunity to obtain relief in a state court, or where the state corrective process is so deficient as to render any effort to obtain relief futile. Id. (citing Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986)). Citing Granberry v. Greer, supra, we noted further that non-exhaustion notwithstanding, a district court may deny a habeas claim on its merits if it appears unequivocally that the petitioner has not raised even a colorable federal claim. Id. We thus proceeded to consider the merits of Evans' claims based on our conclusion that Evans' federal due process claim was "the substantial equivalent of that presented to the state courts" and, thus, had been adequately exhausted. Even though the state failed to raise the exhaustion defense in state court, we relied on Granberry for the authority to reach the merits of Evans'

19

claims. We subsequently affirmed the district court's denial of federal habeas relief. 959 F.2d at 1237.

Unlike Evans, Lambert presents numerous claims which are not the substantial equivalent of those presented to the state court in the direct appeal of her murder conviction. Her petition is more factually analogous to Gibson v. Scheidemantel, supra. There the petitioner alleged an ineffective assistance of counsel claim in state court, but he asserted a different basis for this claim in the state proceeding than that presented in his federal habeas claim. Consequently, we held that the petitioner had not exhausted his claim since the state courts could not be expected to consider a claim that was never made. 805 F.2d at 139.

Nor do we find that Lambert's position is supported, as she contends, by our decision in Moore v. DeYoung, 515 F.2d 437 (3d Cir. 1975). There we acknowledged the possibility that federal habeas review to enjoin a state criminal proceeding prior to trial was possible despite non-exhaustion if "extraordinary circumstances are present." Id. at 443. In finding that Moore failed to present an " `extraordinary circumstance' which would warrant pre-trial, pre-exhaustion habeas corpus relief," we declined to define the parameters of the "extraordinary circumstances" exception, holding only that whatever the boundaries may be, Moore's petition fell outside those limits. 22 Id. at 447. We noted, however, that manifest shortcomings by the prosecutor's office and negligence in conducting Moore's prosecution did not "reveal that quality of delay, harassment, bad faith or other intentional activity which, in an appropriate situation, might constitute an `extraordinary circumstance', justifying pre-exhaustion federal habeas relief." Id. at 447 n. 12.

_____

22. In his petition, Moore alleged that the constitutional right to a speedy trial was so unique that it should bar not only a conviction but trial as well. This unique quality, Moore contended, constituted an "extraordinary circumstance." 515 F.2d at 446.

20

B.

Although we discount Lambert's reliance on Granberry, Frisbie, Evans, and Moore to support a finding of exceptional circumstances sufficient to excuse nonexhaustion, our inquiry does not end there. As we stated earlier, one of the exceptional circumstances in which courts have dispensed with the exhaustion requirement is if further state litigation would be futile. Christy, 115 F.3d at 207. See also Twenty-Sixth Annual Review of Criminal Procedure, 85 Geo. L. J. 775, 1521 & n. 2755 (1997). In making this determination, courts have examined the totality of the circumstances surrounding each petition. Id. at 1521 n. 2755. For example, the Court of Appeals for the First Circuit found the exhaustion requirement excused when a recent independent decision by the highest state court clearly rendered appellate review futile. Id. (citing Allen v. Attorney General of Maine, 80 F.3d 569, 573 (1st Cir. 1996)). Another court of appeals excused the exhaustion requirement when it was clear that the petitioner's claims would be deemed procedurally barred if presented in the state court. Id. (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)). Some courts have been reluctant to apply the futility exception, however, because it has been criticized for potentially bypassing the state courts. Id. at 1522 n. 2755 (citations omitted). Most importantly, we recently applied our jurisprudence to hold that unless a state court decision exists indicating that a habeas petitioner is clearly precluded from state court relief, the federal habeas claim should be dismissed for nonexhaustion, even if it appears unlikely that the state will address the merits of the petitioner's claim. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (citing Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996); Toulson, 987 F.2d at 988–89; Peoples v. Fulcomer, 882 F.2d 828, 831–32 (3d Cir. 1989)).

In Banks, we were faced with whether the Pennsylvania Supreme Court, in death penalty cases, consistently or regularly bars second or subsequent PCRA petitions which may not meet the court's criteria for such petitions, "includ[ing] the existence of `a strong prima facie showing . . . that a miscarriage of justice may have occurred.' "

21

Banks v. Horn, 126 F.3d at 211 (citing Commonwealth v.
Beasley, 678 A.2d 773, 771 (Pa. 1996), cert. denied, ___
U.S. ___, 117 S.Ct. 1257 (1997)). We concluded, based on
our review of Pennsylvania case law, that the Pennsylvania
Supreme Court had established a practice of reaching the
merits of claims in PCRA petitions in capital cases
notwithstanding the failure of the petitioner to meet the
appropriate procedural requirements. Id. at 212-13.
Because we were not sure that the supreme court would
change this practice after the 1995 amendments to the
PCRA, we found that state review of Bank's unexhausted
claims was not foreclosed. Id. at 214.

In deciding Banks, we relied on Doctor v. Walters, supra,
which involved a defendant who fled during the lunch
recess of his criminal bench trial on the charge of
aggravated assault following the presentation of the
Commonwealth's case. When the defendant failed to return,
the trial court, without informing the defendant, his
counsel, or the Commonwealth, entered a guilty verdict
against Doctor. Upon his capture five years later, Doctor
was sentenced to a term of 49 to 98 months in prison. He
filed a timely direct appeal to the Pennsylvania Superior
Court which quashed the appeal without reaching the
merits based on the fugitive forfeiture rule.23 Both the
Pennsylvania Supreme Court and the United States
Supreme Court also declined to hear his appeals. In his
federal habeas petition, Doctor raised a Sixth Amendment
claim which had not been presented to any Pennsylvania
court. We found that although the Pennsylvania courts
would hold, on collateral review, that Doctor waived the
right to assert his Sixth Amendment claim on procedural
grounds, PCRA review was not clearly foreclosed since
Doctor may be able to show that a " `miscarriage of justice'
warranting `departure from the PCRA's stringent eligibility
requirements' " has occurred. 96 F.3d at 681-82 (citation
omitted).

_____

23. Rule 1972(6) of the Pennsylvania Rules of Appellate Procedure
permits a Pennsylvania appellate court to quash an appeal because the
appellant is a fugitive. Doctor v. Walters, 96 F.3d 675, 678 (3d Cir.
1996).

22

Likewise, in Toulson v. Beyer, we considered whether it would be futile to require the petitioner to exhaust his state remedies first. 987 F.2d at 986. There the defendant was convicted in a New Jersey court of various non-capital offenses. After a series of unsuccessful direct appeals to the New Jersey courts and the denial of his motion for post-conviction relief by the state trial court, Toulsonfiled a federal habeas petition containing unexhausted but procedurally barred claims in addition to exhausted claims. In examining pertinent New Jersey law, we found that it was possible that a New Jersey court may allow state review of otherwise procedurally barred claims based on one of two statutory exceptions to the procedural bar rule. 987 F.2d at 988. Accordingly, we held that "[b]ecause no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, . .. the district court should have dismissed the petition without prejudice for failure to exhaust state remedies." Id. at 989. Thus, our precedent makes clear that Lambert must exhaust her state remedies before she can seek federal habeas relief unless such an attempt would be futile. Doctor, 96 F.3d at 681 (citing Toulson, 987 F.2d at 987).

Futility may be encountered where exhaustion is impossible due to procedural default, i.e., the state court refuses to hear the merits of the claim because either (1) the defendant waived a PCRA claim she could have raised in an earlier proceeding but failed to do so; or (2) some other procedural bar exists, such as a statute of limitations. Doctor, 96 F.3d at 681. Moreover, a federal habeas court may excuse exhaustion because of a procedurally barred claim in state court "only when state law `clearly foreclose[s] state court review of [the] unexhausted claims.' Toulson, 987 F.2d at 987." Doctor, 96 F.3d at 681. We further explained:

> If the federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies even if it is unlikely that the state court would consider the merits to ensure that, in the interests of comity and federalism, state courts are

23

> given every opportunity to address claims arising from state proceedings. See Vasquez v. Hillery, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986); Toulson, 987 F.2d at 987.

Id. We must determine, therefore, whether, in the case before us, Pennsylvania collateral review is "clearly foreclosed" such that further state proceedings are futile.

C.

In Pennsylvania, collateral review of a criminal conviction is available under the Post Conviction Relief Act ("PCRA") of 1995, 42 Pa. Con. Stat. Ann. SS 9541-46 (West 1997 Supp.).24 The scope of the relief provided under the PCRA is limited to "persons convicted of crimes they did not commit and persons serving illegal sentences . . .".25 42 Pa. Con. Stat. Ann. S 9542. Section 9542 further provides that the PCRA "shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when [the PCRA] takes effect, including habeas corpus and coram nobis." The PCRA also imposes several eligibility criteria for relief. First, the petitioner must plead and prove by a preponderance of the evidence that she is, at the time relief is granted, currently serving a sentence of imprisonment, or is on probation or parole, or is awaiting execution of a death sentence. 42 Pa. Con. Stat. Ann. S 9543(a)(1). Second, the petitioner must prove by a preponderance of the evidence that her conviction or sentence resulted from one or more of seven categories of claims, only three of which are relevant. We paraphrase them here:

> (1) The petitioner's rights under the Pennsylvania

_____

24. The PCRA of 1995 became effective on January 16, 1996, and applies to postconviction petitions filed on or after that date. The PCRA was subsequently amended by Act No. 1997-33 (H.B. 87), effective June 25, 1997, but the changes are irrelevant to the dispute before us.

25. Because it provides a limited scope of relief, the PCRA of 1995 has been described as "one of the most restrictive and narrow of all the modern state postconviction remedies." Donald E. Wilkes, Jr., State Postconviction Remedies and Relief, App. A, p. 760 (1996 Ed.).

24

Constitution or the Constitution or laws of the United States were violated which, under the circumstances, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(2) The petitioner received ineffective assistance of counsel which, under the circumstances, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(3) Exculpatory evidence, which was unavailable at the time of trial, was subsequently discovered and would have changed the outcome of the trial if it had been introduced.

42 Pa. Con. Stat. Ann. S 9543(a)(2)(i), (ii), and (vi).

Next, the petitioner must show by a preponderance of the evidence that the alleged error has not been previously litigated or waived. 42 Pa. Con. Stat. Ann. S 9543(a)(3). "An issue will be deemed previously litigated when `the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue,' " Commonwealth v. Morales, 701 A.2d 516, 1997 WL 578289, *1 (Pa. Sept. 17, 1997) (quoting 42 Pa. Con. Stat. Ann. S 9544(a)(2)), or "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. Con. Stat. Ann. S 9544(a)(3). In her federal habeas petition, Lambert advances three claims which were previously litigated in the direct appeal of her conviction and sentence. Accordingly, Lambert is not entitled to postconviction relief on those claims under the PCRA and has thus exhausted her state remedies as to these three claims.

Finally, by a preponderance of the evidence, the petitioner must demonstrate that the failure to litigate an issue previously was not the result of any rational, strategic or tactical decision by counsel. 42 Pa. Con. Stat. Ann. S 9544(a)(4). Neither the contentions of the parties nor the evidence of record suggests that Lambert's trial counsel strategically planned to exclude in her direct appeal some of the claims now raised.

25

Particularly significant to this appeal is the PCRA provision on waiver, which states, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa. Con. Stat. Ann. S 9544(b). In this regard, the Pennsylvania courts have held "that nearly all claims are waived under the PCRA since nearly all claims potentially could have been raised on direct appeal. This applies even if the first-time petitioner never has obtained appellate review of his conviction." Commonwealth v. Eaddy, 614 A.2d 1203, 1207-08 (Pa.Super. 1992), appeal denied, 626 A.2d 1155 (Pa. 1993). Prior to 1995, the PCRA also provided two exceptions to the waiver rule. If the alleged error either (1) resulted in the conviction of an innocent person, or (2) did not constitute a state procedural default barring federal habeas relief, then the waiver was excused. 42 Pa. Con. Stat. Ann. SS 9543(a)(3)(ii) and (iii) (West 1988). Neither of these two exceptions, however, is available to Lambert since her direct appeal was not final until after the effective date of the 1995 amendment to the PCRA. While Lambert maintains and the district court held that elimination of these two exceptions in the 1995 amendment effectively bars relief under the PCRA on all claims, we are not convinced that this is necessarily the case.

In the past, the Pennsylvania Supreme Court has allowed the petitioner, in limited circumstances, to overcome the waiver provisions where he has made a strong prima facie showing that a "miscarriage of justice" may have occurred. Commonwealth v. Lawson, 549 A.2d 107, 112 (Pa. 1988). In order to prevail under this theory, the petitioner must show either: "(a) that the proceedings resulting in[the] conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate, or (b) that [the petitioner] is innocent of the crimes charged." Commonwealth v. Szuchon, 633 A.2d 1098, 1100 (Pa. 1993) (citing Lawson, 549 A.2d at 112). In a concurring opinion, Justice Papadakos provided the following edification on "miscarriage of justice":

A miscarriage of justice, like prejudice, can only occur where it is demonstrated that a particular omission or

26

commission was so serious that it undermined the reliability of the outcome of the proceeding. Where a conviction can be shown to result from a breakdown in the adversary process, the conviction rendered is unreliable. Such a conviction is obviously prejudicial to the defendant and, if allowed to stand, is a miscarriage of justice.

Lawson, 549 A.2d at 112 (Papadakos, J., concurring).

Moreover, we noted in Doctor that allegations of a miscarriage of justice have been permitted to override the waiver provisions of the PCRA in the context of successive PCRA petitions, which was the situation in Lawson, supra. 96 F.3d at 682 n. 6. We further noted that the Pennsylvania courts, however, have not addressed whether a showing of miscarriage of justice can be applied to overcome the waiver provisions in an initial PCRA petition. Id. In Doctor, we refused to find that collateral review was foreclosed since we concluded that Pennsylvania case law left open the possibility that a showing of miscarriage of justice can overcome the waiver provisions in an initial PCRA petition. Id. We thus concluded that a return to state court would not be futile. Id. at 683.

In Banks, we reiterated our policy regarding review of waived or procedurally defaulted claims, which we originally stated in Toulson and applied in Doctor :

> [I]n the absence of a state court decision indicating that a habeas corpus petitioner is clearly precluded from state court relief, the district court should dismiss the claim for failure to exhaust even if it is not likely that the state court will consider petitioner's claim on the merits.

126 F.3d at 211. We have applied this policy to all habeas corpus cases involving state convictions regardless of the sentence imposed. Whether, in fact, state case law exists which establishes unequivocally that state relief is precluded would depend on the particular facts of the case. Although factually Banks is distinguishable from Lambert's situation, the general rule of Banks governs our resolution of this dispute.26 Neither Lambert nor the district court

---

26. Lambert argues our decisions in Banks and Doctor are distinguishable and, therefore, inapposite. Lambert attempts to

27

cites any authority to the contrary. The Commonwealth, on
the other hand, cites several decisions in which
Pennsylvania courts have expressed a willingness to depart
from the PCRA's stringent waiver standards for non-capital,
as well as capital cases, where actual innocence or manifest
injustice is alleged. See Commonwealth v. Moss , 689 A.2d
259, 262 (Pa.Super. 1997) (where there is a strong prima
facie showing that a miscarriage of justice may have
occurred in a rape conviction, court will consider the merits
of a fifth PCRA petition); Commonwealth v. Williams, 660
A.2d 614, 618-19 (Pa.Super. 1995), appeal denied , 674
A.2d 1071 (Pa. 1996) (although the court denied PCRA

_____

distinguish Doctor on the basis that the petitioner failed to raise in the
state court the legal theory and facts supporting his habeas claim, and
that we were referring to the pre-amendment PCRA when we noted the
availability of a "miscarriage of justice" exception to the waiver rule.
Our
holding in Doctor is clear: Pennsylvania case law leaves "open the
possibility that a showing of miscarriage of justice can overcome the
waiver provisions in an initial PCRA petition." 96 F.3d at 682 n.6. In
reaching this conclusion, we were construing the PCRA as amended in
1995, as evidenced by our citation to the 1996 supplement and the
language of the statute as amended in 1995.

Lambert distinguishes Banks on the basis that it is a death penalty
case with a clearly existing avenue for state court review. In a letter
brief
to the court dated September 30, 1997, Lambert states:

> In other words, Banks, Toulson, and Doctor hold only that a
> petitioner should be returned to state court to pursue an avenue of
> review that clearly exists. The present case presents precisely the
> opposite situation. Here, the avenue of state review-- indeed, the
> very review opportunity that was available in Toulson and Doctor --
> has been permanently blockaded by an explicit act of the
> Pennsylvania legislature eliminating the waiver excuses and
> advertently sending the cases at issue, including Lambert, to
federal
> court where waiver excuses still exist; and the practice in death
> sentence cases of ignoring waivers that was available in Banks is
> inapplicable.

Further, Lambert states that "where the legislature has advertently
channeled the case at issue to federal court--the district court should
proceed to the cause and prejudice/miscarriage of justice inquiry under
Schlup [v. Delo, 513 U.S. 298 (1995)]." (Citing Carter v. Vaughn, 62 F.3d
591, 595 (3d Cir. 1995)).

28

relief to a defendant who pled nolo contendere  to robbery, it acknowledged that Pennsylvania courts will address the merits of waived claims upon a showing of manifest injustice); Commonwealth v. Fiore, 665 A.2d 1185, 1194 (Pa.Super. 1995), appeal denied, 675 A.2d 1243 (Pa. 1996) (Hoffman, J., concurring, wrote separately "to emphasize that there are circumstances where a departure from the PCRA's stringent eligibility requirements is appropriate, such as where there are extraordinary circumstances or a miscarriage of justice.").

A showing of ineffective assistance of counsel may also excuse waiver. Morales, 701 A.2d 516, 1997 WL 578289, *2 (citing Commonwealth v. Christy, 656 A.2d 877, 881 (Pa.), cert. denied, ___ U.S. ___, 116 S.Ct. 194 (1995)) (ineffective assistance of counsel could be a basis for post-conviction relief only if the defendant had a constitutional right to counsel in the proceeding in which he claimed ineffectiveness); see also Commonwealth v. Buehl , 658 A.2d 771, 777 (Pa. 1995) (three members of a divided court interpreted the PCRA to require a defendant claiming ineffectiveness of counsel to meet a more demanding standard of prejudice than if he had raised this issue on direct appeal); Thomas M. Place, Ineffective Assistance of Counsel Under the Pennsylvania Post Conviction Relief Act, 69 Temple L. Rev. 1389 (1996). Waiver of errors under the PCRA will be excused for ineffective assistance of counsel if the defendant had a constitutional right to counsel at the stage in the proceedings where counsel's ineffectiveness brought about the waiver. Place, supra, at 1410 (citing Christy, 656 A.2d at 881) (additional citation omitted). "Consequently, ineffectiveness of counsel will only excuse waiver of errors for claims where counsel is ineffective at trial and on direct appeal." Id. (citing Christy, supra). If the underlying claim was previously litigated on appeal, post-conviction relief is not available based on a claim of ineffective assistance of counsel. Id. (citations omitted). Moreover, an ineffectiveness claim " `must be raised at the earliest stage in the proceedings at which the allegedly ineffective counsel is no longer representing the [defendant].' " Id. (citing Commonwealth v. Griffin, 644 A.2d 1167, 1170 (Pa. 1994)). Finally, it should be noted that "[c]ounsel's performance in terms of waiver becomes an

29

issue only in those cases where new counsel represents the defendant at post-trial motions. If the new counsel does not preserve the issue of the trial counsel's ineffectiveness in post-trial motions, the new counsel waives the issue unless a court determines that post-trial counsel provided ineffective representation." Id. (footnote omitted).27

Our review of Pennsylvania decisional law leads us to conclude that it is unclear after the 1995 amendments to the PCRA whether the Pennsylvania courts would allow a showing of miscarriage of justice to overcome the waiver provisions in a non-capital case upon an initial PCRA petition. Indeed, we have not discovered cases addressing this issue after the passage of the 1995 amendments. Accordingly, we cannot say that requiring Lambert to seek review of her claims in the state courts is futile. 28

_____

27. Although neither party has addressed the issue of whether ineffectiveness of counsel excused waiver, the Commonwealth acknowledged in its letter brief dated September 30, 1997, Pennsylvania decisional law holding that "PCRA courts will consider claims which otherwise would be deemed waived when raised under the rubric of ineffective assistance of counsel." Commonwealth v. K.M., 680 A.2d 1168, 1171 n. 8 (Pa.Super. 1996) (citing Commonwealth v. Griffin, 644 A.2d 1167 (Pa. 1994)). Moreover, it is possible that Lambert could argue in a PCRA petition that second post-trial counsel provided ineffective representation in not raising the unexhausted claims in her direct appeal. Since Lambert is now represented by different counsel, arguably she would be raising the unexhausted claims at the earliest stage in the proceedings at which previous counsel provided allegedly ineffective representation. The uncertainty surrounding the availability of this exception to the waiver rule further supports dismissal of the habeas petition to allow the state court the opportunity to rule in the first instance.

28. We find the district court erred in concluding that the Commonwealth waived the exhaustion defense when it temporarily conceded during the evidentiary hearing that Lambert was entitled to some relief. Considering the circumstances under which the concession was made, i.e., the Commonwealth was forced to defend the petition on the merits without the benefit of a ruling on its exhaustion defense prior to the evidentiary hearing, the fact that the Commonwealth continuously maintained that Lambert had failed to exhaust her state remedies at all stages of the proceedings, and the requirement that the waiver be expressly given, we cannot say the Commonwealth waived the exhaustion defense.

III.

In seeking state collateral review of her nonexhausted claims, Lambert has several options. It is possible that under 42 Pa. Con. Stat. Ann. S 5103, Lambert may transfer her federal proceeding to the appropriate Pennsylvania court. In addition, Lambert may institute a PCRA action utilizing one or more of the three exceptions to the PCRA statute of limitations, which allows for the filing of a PCRA petition at the present time. We discuss these options briefly.

A.

The Pennsylvania Transfer Statute provides in pertinent part:

> (a) General rule.--If an appeal or other matter is taken to or brought in a court . . . of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court . . . shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court . . . of this Commonwealth.

42 Pa. Con. Stat. Ann. S 5103(a) (West 1997 Supp.) In the case of actions originally filed in any United States court, the statute further provides:

> [Section 5103(a)] shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this Commonwealth. In order to preserve a claim under Chapter 55 (relating to limitation of time), a litigant who timely commences an action or proceeding in any United States court for a district embracing any part of this Commonwealth is not required to commence a protective action in a court . . . of this Commonwealth. Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of

31

jurisdiction, any litigant in the matter filed may transfer the matter to a court . . . of this Commonwealth by complying with the transfer provisions set forth in [section 5103(b)(2)].

42 Pa. Con. Stat. Ann. S 5103(b)(1) (West 1997 Supp.).

Although the transfer act clearly applies when the original court lacks jurisdiction over the appeal or other matter, we believe it may also apply here where the district court dismisses a federal habeas petition for failure to exhaust state remedies.29 The language of section 5103(b)(1) indicates that a purpose of the statute is to prevent the barring of claims and other matters under the statute of limitations when the original court lacked jurisdiction over a matter which was timely filed. Applying the transfer act under the facts here would be entirely consistent with the purpose of the statute.

We hasten to add, however, that we are not endorsing the application of the transfer statute in all federal habeas actions dismissed for nonexhaustion. Rather, we suggest that transfer may be appropriate where, as here, the district court did not originally dismiss the petition for failure to exhaust state remedies. Instead, the court prematurely proceeded to adjudicate the merits of the claim during which the one-year statute of limitations expired. Under these unique circumstances, the Pennsylvania transfer statute may apply and any action commenced by Lambert under the PCRA would be treated as filed on September 12, 1996, the date on which she filed her petition for writ of habeas corpus in the district court.

B.

Lambert has yet another option. The 1995 amendment to the PCRA enacted for the first time a one-year statute of limitations.30 Since the effective date of the 1995 Act is

_____

29. When a district court dismisses a federal habeas petition for nonexhaustion, it nevertheless has jurisdiction. The dismissal is based on principles of comity afforded state courts.

30. Prior to the 1995 amendment, the PCRA did not contain a limitations provision for filing a PCRA petition.

32

January 16, 1996, and Lambert's direct appeal wasfinal on July 2, 1996, under 42 Pa. Con. Stat. Ann. S 9545(b)(1), she had until July 1, 1997 to file a PCRA petition.31 A literal reading of section 9545 indicates that by failing tofile a PCRA petition on or before July 1, 1997, Lambert may now be barred from filing a PCRA petition on her unexhausted claims. Section 9545 also contains three exceptions to the one-year filing requirement. Essentially, the limitations period will be excused where (1) the petitioner failed to raise the claim previously due to interference by government officials with the presentation of the claim in violation of the constitutions and laws of the United States and Pennsylvania; (2) the facts upon which the claim is based were unknown to the petitioner and could not have been discovered through due diligence; or (3) the claim involves a constitutional right recognized by the Supreme Court of the United States or of Pennsylvania subsequent to the expiration of the statute of limitations and held to apply retroactively. 42 Pa. Con. Stat. Ann. S 9545(b)(1)(i), (ii), and (iii). Interestingly, the original version of the bill proposing the 1995 amendments to the PCRA contained a fourth exception to the one-year time limit which was eliminated before final passage. That exception would have allowed a waiver of the statute of limitations where "[t]here is a compelling need to address the claim because of a fundamentally unfair trial, illegal sentence or some other manifest injustice." H.R. 179-66, 1st Spec. Sess., at 510 (Pa. 1995).32

_____

31. Section 9545(b) states in relevant part:

    (1) Any petition under [the PCRA], including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final. . . .

    (3) [A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

32. The debate on this amendment centered on the concerns of certain representatives that by providing a "manifest injustice" exception, they would be opening a Pandora's box for the Pennsylvania appellate courts. H.R. 179-66, 1st Spec. Sess., at 510 (Pa. 1995). Mr. Piccola argued that

The possibility exists that Lambert may be able to plead and prove one or more of the excuses to the statute of limitations. For example, Lambert has alleged in her federal habeas petition that she discovered certain exculpatory evidence after her conviction for first degree murder. Moreover, she cites numerous instances of alleged prosecutorial misconduct which, if proven, may be sufficient to fall within the first exception of unconstitutional interference by government officials. We note that to date, no Pennsylvania court has been asked to decide under what circumstances it would excuse an untimely PCRA petition under the new statute of limitations provision.33 Thus, Lambert may be able to proceed under the PCRA.

_____

Pennsylvania case law does not provide guidance on what constitutes "manifest injustice" and cautioned against passing these words into the statute without defining them. Id. At 511. He further commented that the current bill (S.B. 81) contained adequate protection for the criminal defendant who finds new evidence after trial, as well as in many other circumstances. Id. The "manifest injustice" amendment was eventually defeated. Id. at 512. On the other hand, Mr. Thomas, who introduced the amendment, argued that "the amendment provide[d] a protective mechanism in situations where there is conduct that does not arise until way beyond the statutory period," . . . . Id. at 510. He further commented that "fairness would require that we provide an . . . avenue of relief, in situations where individuals do not come face to face with conduct that has resulted in either their incarceration or their harm beyond that . . . statutory year that is provided for in this particular bill."
Id. at 510-11. He opined that passage of the bill without the avenue of review provided in the amendment would cause a disservice to the whole judicial system. Id. at 511.

33. Under the prior statute which did not contain a statute of limitations provision, the Pennsylvania courts were lenient in allowing collateral review after long delays, especially in situations involving ineffective assistance of counsel. See, e.g., Commonwealth v. Johnson, 532 A.2d 796 (Pa. 1987) (mere delay, standing alone, may not be sufficient reason to reject PCRA petition summarily); Commonwealth v. McCabe, 519 A.2d 497 (Pa.Super. 1986) (a PCRA petition filed six years after the supreme court affirmed denial of his petition to set aside an illegal sentence was not untimely); Commonwealth v. Taylor, 502 A.2d 195 (Pa.Super. 1985), appeal denied (1986) (unexplained delay in filing first PCRA petition is a factor to be considered in assessing the merits of
the claims raised in the petition, but is not a basis for refusing to consider the claims by reason of laches and waiver).

34

IV.

One final matter bears mention. Each side has brought to our attention serious factual issues concerning the district court's finding that Lambert was actually innocent of first degree murder. In light of our resolution of Lambert's petition, we need not comment on Lambert's actual innocence. Indeed, to do so would be to "deprive the state courts of an `opportunity to correct their own errors, if any,' " Doctor, 96 F.3d at 683 (citing Toulson, 987 F.2d at 989), by engaging in a premature examination of the verdict prohibited by Congress under the AEDPA.

We do not, however, diminish the obvious sense of outrage expressed by the prosecution nor that of the able district judge who heard and evaluated the evidence Lambert proffered. Resolution of these difficult questions must nonetheless await the appropriate forum for the constitutional balance our forefathers created to remain in equipoise. Accordingly, we will vacate the order of the district court granting the petition for writ of habeas corpus and remand to the district court with the direction to dismiss the petition without prejudice.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

35