Sterling HOBBS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 931987.

Supreme Court of Delaware.

Submitted: Nov. 3, 1987.
Decided: Feb. 24, 1988.

Nancy Jane Perillo, Asst. Public Defender, Wilmington, for appellant.

Loren C. Meyers, Deputy Atty. Gen., Wilmington, for appellee.

Before HORSEY, MOORE and HOLLAND, JJ.

HORSEY, Justice:

The underlying issue in this postconviction relief appeal is whether a death-qualified jury is necessarily conviction prone simply because the conviction was rendered in a trial occurring under a mandatory death penalty statute later declared to be unconstitutional.

In 1976, the defendant, Sterling Hobbs, in a trial by jury in Superior Court with three other defendants, including Clarence Hooks, was convicted of First Degree Murder, First Degree Robbery, Second Degree Conspiracy and Possession of a Deadly Weapon During the Commission of a Felony. Defendant Hobbs was sentenced to death under the mandatory death sentence statute, 11 *Del.C.* § 4209, then in existence.[1]

In a certification proceeding involving this defendant and others convicted and sentenced under section 4209, we declared the mandatory death penalty provision of

1. At the time of defendant's conviction and original sentencing, section 4209(a) provided:

In any case in which a person is convicted of first degree murder the court shall impose a sentence of death. If the penalty of death is determined to be unconstitutional the penalty for first degree murder shall be life imprisonment without benefit of parole.

11 *Del.C.* § 4209(a) (1974) (current version at 11 *Del.C.* § 4209(a)) (1986).

section 4209 unconstitutional and ordered all death sentences imposed thereunder set aside and the alternative sentence of life imprisonment without parole substituted. *State v. Spence*, Del.Supr., 367 A.2d 983 (1976). Accordingly, defendant's sentence was so commuted.

Thereafter, defendant's convictions were affirmed by this Court on direct appeal. *Hooks v. State*, Del.Supr., 416 A.2d 189 (1980). On appeal, Hobbs and the other defendants raised numerous issues, including claims that "systematic exclusion of prospective jurors with conscientious scruples against the imposition of capital punishment led to the seating of an unrepresentative jury," 416 A.2d at 194, and that a jury so selected was "biased towards conviction" and, thus, "conviction prone." Id. at 195. Rejecting these contentions, this Court found the jury selection process to comply with *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, *reh'g denied*, 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In so ruling, we noted that the jury was properly death qualified under 11 *Del. C.* § 3301 and *Witherspoon* in that only those jurors "unable to render an impartial verdict because of their opposition to capital punishment" were excused. *Hooks*, 416 A.2d at 194 (describing the *Witherspoon* constitutional standard for death qualifying a jury); *see also Lockett v. Ohio, supra* (affirming the *Witherspoon* standard).

Defendant subsequently filed a petition for a writ of habeas corpus in the Federal District Court for the District of Delaware, raising essentially the same claim that he now asserts. However, the Circuit Court ultimately dismissed the petition for failure of defendant to exhaust his state remedies. *Abubake v. Redman*, 3d Cir., 696 F.2d 980 (1982), *vacating sub nom. United States v. Redman*, D.Del., 521 F.Supp. 963 (1981).

In 1983, defendant, acting *pro se*, filed in Superior Court his present Rule 35(a) motion, raising multiple postconviction relief issues, including his impartial jury claim. In 1984, Hobbs secured representation by present counsel, who agreed to represent

Hobbs solely on the issue of the jury selection procedure. Defendant then framed his claim for relief as follows: as a result of the death qualification of the jury in his 1976 trial under section 4209 (a constitutionally invalid capital punishment statute), Hobbs was deprived of his Federal and State constitutional rights to an impartial jury. The thrust of defendant's argument before Superior Court and on appeal is that the invalidity of the former section 4209 "retrospectively abrogated" the State's right to death qualify the jury and resulted in a jury more prone to convict.

The Superior Court rejected defendant's death qualification claim under the cause and prejudice test of *Johnson v. State*, Del.Supr., 460 A.2d 539 (1983). Accepting defendant's argument that the issue now raised had not been raised by defendant in his direct appeal to this Court, Superior Court, applying *Johnson*, found prejudice not to have been established and, therefore, the contention now raised to be procedurally barred. The Court reasoned that, assuming defendant could show cause (or excuse) for not having raised this issue in his direct appeal, he could not establish actual prejudice to have resulted from the jury selection process. Defendant could not establish that the jury selection exclusion resulted in a jury that would not have returned a guilty verdict given the overwhelming evidence of record of defendant's guilt. We affirm, though on different grounds and for different reasons.

While we agree that if the cause and prejudice test applied to this appeal, the defendant would be unable to meet that test, our reading of the record persuades us that the issue now raised was decided by this Court on defendant's direct appeal in 1980. *Hooks*, 416 A.2d 189. Therefore, in our view, the cause and prejudice test does not attach. *Johnson*, 460 A.2d at 540.

Hobbs' Rule 35 argument that he was denied a fair trial by an impartial jury (through the exclusion of prospective jurors having conscientious scruples against the death penalty) is not materially different from his argument, which we rejected, on direct appeal. In his direct appeal, as

previously noted, defendant argued that "in the process of picking a jury where those with conscientious scruples against capital punishment are excluded a conviction-prone jury is inevitably formed." *Hooks*, 416 A.2d at 195.

In *Hooks*, which followed *Spence* by several years, we explicitly rejected defendant's argument that a death-qualified jury was biased towards conviction and thus, conviction prone. *Hooks*, 416 A.2d at 195. Finding the empirical evidence supporting defendant's theory to be tentative and fragmentary and applying *Witherspoon*, we held that a death-qualified jury has not been proven to be conviction prone and, therefore, will not be deemed to be conviction prone. *Id; see also Witherspoon*, 391 U.S. at 517–18, 88 S.Ct. at 1774–75, 20 L.Ed.2d at 782.

Defendant Hobbs submits in this proceeding no evidence in support of his theory that differs from the evidence presented to this Court on direct appeal, nor does the defendant offer evidence that differs from the evidence presented in *Blount v. State*, Del.Supr., 511 A.2d 1030 (1986), or *Baynard v. State*, Del.Supr., 518 A.2d 682 (1986). Those cases reaffirm our decision in *Hooks* that post-*Witherspoon* empirical statistical studies on the effect of a death-qualified jury in the guilt/innocence phase of trial are inconclusive. *Accord Lockhart v. McCree*, 476 U.S. 162, 170–71, 106 S.Ct. 1758, 1763, 90 L.Ed.2d 137, 146 (1986) (post-*Witherspoon* studies do not support adoption of a "per se constitutional rule" that death-qualified juries are conviction prone).

▇ The only new matter in defendant's latest argument is the consequence of his contention that he was convicted under a death penalty statute later declared to be unconstitutional. Defendant argues that the invalidity of section 4209 retrospectively abrogated the State's right to death qualify the jury and resulted in a jury more prone to convict.

*Witherspoon* contradicts defendant's position. The Court in *Witherspoon* stated that its holding did not "render invalid the *conviction*, as opposed to the *sentence*, in this [*Witherspoon*] or any other case."

391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21, 20 L.Ed.2d at 785 n. 21 (emphasis in original); *accord Adams v. Texas*, 448 U.S. 38, 51, 100 S.Ct. 2521, 2529, 65 L.Ed.2d 581, 593 (1980) (defendant denied constitutional right to impartial jury; judgment of the lower court reversed "to the extent that it sustains the imposition of the death penalty"). As with the defendant in this case, the defendant in *Witherspoon* was convicted and sentenced to death in a trial with an unconstitutional infirmity. In *Witherspoon*, the jury qualification procedure was declared unconstitutional; in *Hooks*, the mandatory death sentence statute was unconstitutional. Thus, the unconstitutional sentencing infirmity does not invalidate the underlying conviction.

Hobbs also fails to demonstrate the relevance of section 4209's unconstitutional feature to a constitutional jury selection procedure. The jury selection process is governed by a different statute, 11 *Del.C.* § 3301, which this Court has upheld as constitutional. *See Steigler v. State*, Del. Supr., 277 A.2d 662 (1971). Moreover, section 3301 "follows very closely the rule laid down in *Witherspoon*" that only jurors unable to render an impartial verdict due to their conscientious scruples against capital punishment can be excused for cause. *Hooks*, 416 A.2d at 194. On direct appeal, we held that the Superior Court adhered "painstakingly" to the *Witherspoon* standard. *Id.*

This Court has consistently upheld as constitutional the death qualification process in Delaware. In *Blount*, 511 A.2d at 1036–37, we held that the death qualification of a capital jury in Delaware at both the guilt/innocence phase and penalty phase of trial is permissible under the Federal and State Constitutions. Recent United States Supreme Court decisions support this holding. *E.g., Buchanan v. Kentucky*, 483 U.S. ——, ——, 107 S.Ct. 2906, 2914–16, 97 L.Ed.2d 336, 351–53 (1987) (trying a defendant, against whom the prosecution does not seek the death penalty, with his co-defendant for whom the death penalty is sought, by a death-qualified jury, does not affect the jury's impartiality or verdict); *Lockhart*, 476 U.S. at 177–78, 106

S.Ct. at 1767, 90 L.Ed.2d at 151 (a death-qualified jury is, by definition, constitutionally impartial).

■ As recently as *Riley v. State*, Del. Supr., 496 A.2d 997 (1985), *cert. denied*, 478 U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), and *DeShields v. State*, Del. Supr., 534 A.2d 630 (1987), this Court has sustained section 3301 and the qualification of jurors based on their ability to follow instructions. *See also Adams*, 448 U.S. at 44–45, 100 S.Ct. at 2526, 65 L.Ed.2d at 589 (a state has a legitimate interest in obtaining jurors able to follow instructions and obey their oaths; a juror may be challenged for cause based on his views of capital punishment if "those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath"). The controlling standard for determining a prospective juror's qualification based on his or her view on capital punishment is the juror's ability to comply with the trial court's instructions and his/her oath. *See Riley*, 496 A.2d at 1003 (relying upon *Adams v. Texas*).

Defendant's present appeal is clearly controlled by the authorities discussed above and has been previously decided adversely to defendant in *Hooks*.

\* \* \*

AFFIRMED.