**Amir FATIR, Petitioner,**

v.

**James THOMAS, and The Attorney General of the State of Delaware, Respondents.**

**No. Civ.A. 97–79 GMS.**

United States District Court,
D. Delaware.

July 13, 2000.

---

Amir Fatir, petitioner pro se.

Loren C. Meyers, Delaware Department of Justice, Wilmington, DE, for respondents.

## MEMORANDUM OPINION

SLEET, District Judge.

On December 24, 1996, Petitioner Amir Fatir ("Fatir") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] As discussed more fully below, Fatir challenges the constitutionality of (1) the statute pursuant to which he was sentenced, 11 Del.C. § 4209; (2) the manner in which the Delaware Supreme Court construed § 4209; and (3) the procedures pursuant to which he was resentenced after a portion of § 4209 was found to be unconstitutional. For the reasons that follow, the court will deny Fatir's petition.

## I. BACKGROUND

In 1976, after a trial by jury in the Delaware Superior Court, Fatir[2] and three co-defendants were each convicted of first degree murder, first degree robbery, and conspiracy in the second degree. Fatir was also convicted of possession of a deadly weapon during the commission of a felony. The four men were convicted

based on their alleged participation in the robbery of a liquor store on May 5, 1975, during which a store clerk was shot and killed. In April 1976, all four men were sentenced to death for their murder convictions in accordance with the then-existing version of 11 Del.C. § 4209(a). That version, which has since been amended, provided as follows:

> In any case in which a person is convicted of first degree murder the court shall impose a sentence of death. If the penalty of death is determined to be unconstitutional the penalty for first degree murder shall be life imprisonment without benefit of parole.

*Hobbs v. State,* 538 A.2d 723, 723 (Del. 1988) (quoting 11 Del.C. § 4209(a) (1974)). Fatir was present in court and represented by counsel when his sentence was imposed.

On July 2, 1976, the United States Supreme Court ruled that the mandatory death penalty statutes of North Carolina and Louisiana were unconstitutional. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Because those decisions called into question the constitutionality of § 4209, the Delaware Supreme Court consolidated the nine cases then pending (including Fatir's) in which death sentences had been imposed under § 4209. The cases were consolidated for the limited purpose of addressing the following three certified questions:

1. Are the provisions governing punishment for first degree murder in 11 Del.C. § 4209(a) constitutional under Woodson v. North Carolina

---

1. The petition was originally filed in the United States District Court for the District of Arizona. Fatir was convicted in the Delaware Superior Court and was incarcerated in Delaware until 1996. At that time, he was transferred to the Arizona state prison where he currently resides, pursuant to the Interstate Corrections Compact, codified at 11 Del.C. §§ 6570–6573. On January 9, 1997, the Arizona District Court entered an order transferring the case to the District of Delaware,

pursuant to 28 U.S.C. § 1404(a). By order dated August 19, 1998, Judge McKelvie (to whom the case was then assigned) substituted the Attorney General of Delaware for the Attorney General of Arizona as a respondent in this case. *See* Docket Item ("D.I.") 16.

2. Fatir was then known as Sterling Hobbs, and was referred to as such in all state and federal court opinions discussed below.

and related cases? (Including the questions of the constitutionality of both sentences of § 4209(a) and the separability thereof.)

2. If the answer to question 1 is no, what sentence may be imposed?

3. If the answer to question 2 is "life imprisonment without benefit of parole," what does that sentence mean in light of 11 Del.C. § 4371 et seq.? [3]

*State v. Spence,* 367 A.2d 983, 985 (Del. 1976).

After considering briefs filed by counsel for the affected parties, the Delaware Supreme Court struck down the mandatory death provision in the first sentence of § 4209(a). *See id.* at 988. It then concluded, however, that the second sentence of § 4209(a)—mandating a sentence of "life imprisonment without benefit of parole" in the event the death penalty were determined to be unconstitutional—was severable and constitutionally valid as to each of the defendants. *See id.* at 989. Finally, it concluded that the "good time" credit provisions of §§ 4371 and 4372 were inapplicable to life sentences under § 4209(a), such that "life imprisonment without benefit of parole" under § 4209(a) meant "confinement for the balance of the life of the person convicted." *Id.* at 990.

Fatir and his three co-defendants appealed their convictions to the Delaware Supreme Court, raising various arguments unrelated to sentencing. In an opinion dated May 3, 1980, the Court affirmed each of the defendants' convictions. It noted, however, that resentencing would be necessary on the first degree murder convictions in accordance with the decision in *State v. Spence. See Hooks v. State,* 416 A.2d 189, 208 n. 10 (Del.1980). The Court described *Spence* as having "ruled that the sentence to be imposed in this case for

Murder in the first degree is life imprisonment without benefit of parole under 11 Del.C. § 4209(a) (1974)." *Hooks,* 416 A.2d at 193 (citing *Spence* ).

On remand, the Superior Court judge issued a written order vacating the death sentences originally imposed and sentencing each of the four defendants to life imprisonment without benefit of parole. The defendants moved to vacate the life sentences and to require that the new sentences be imposed in open court in the presence of the defendants and counsel. The Superior Court judge denied their request.

The four defendants, with the assistance of counsel, then appealed their life sentences to the Delaware Supreme Court. The sole issue raised on appeal was whether the court below violated the defendants' constitutional rights by sentencing them by written order, rather than in open court in their presence and with the assistance of counsel. The Court denied the appellants' request for relief. It emphasized that the lower court had "no discretion whatsoever" on remand. *See Hooks v. State,* 429 A.2d 1312, 1314 (Del.1981). Because the sentencing judge was required to follow the Delaware Supreme Court's mandate and sentence the defendants to life imprisonment without benefit of parole, the Court found no reversible error in the imposition of that sentence by written order. *See id.*

Fatir and two of his co-defendants then filed petitions for writs of habeas corpus in the United States District Court for the District of Delaware.[4] The petitioners raised various challenges to their convictions, none of which are related to the sentencing issues raised in Fatir's present petition. The district court denied their petitions, rejecting some of the claims as

---

**3.** Sections 4371 and 4372 provided for the diminution of sentences for good behavior while incarcerated—i.e., so called "good time" credits. *See State v. Spence,* 367 A.2d 983, 989 n. 14 (Del.1976).

**4.** Actually, the record is unclear as to whether those petitions were filed before or after the life sentences had been affirmed on appeal. That uncertainty is immaterial to the present petition.

unexhausted and other claims on the merits. *See Abubake v. Redman,* 521 F.Supp. 963 (D.Del.1981). The Third Circuit Court of Appeals vacated the district court's judgment, ruling that the petition was a "mixed petition" requiring dismissal without prejudice under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See Abubake v. Redman,* 696 F.2d 980 (3d Cir.1982).

In 1983, Fatir filed a motion for post-conviction relief in the Delaware Superior Court, asserting several claims unrelated to his sentencing. That motion was denied. *See State v. Hobbs,* 1987 WL 8269 (Del.Super. Mar.10, 1987). Fatir, with the assistance of counsel, appealed that denial to the Delaware Supreme Court, again raising arguments unrelated to the issues presented in his present petition. The Court affirmed the lower court's ruling. *See Hobbs v. State,* 538 A.2d 723 (Del. 1988).

After several unsuccessful attempts at having his sentence commuted, Fatir filed the instant petition for a writ of habeas corpus.

## II. GROUNDS RAISED IN FATIR'S PETITION

Fatir's petition purports to set forth seven separate grounds for relief. From those seven, the court can perceive the following five distinct grounds for relief[5]:

- Ground One—By resentencing Fatir by written order, the Superior Court denied Fatir's constitutional rights to be present in court and to allocute before sentencing is imposed;

- Ground Two—By resentencing Fatir by written order, the Superior Court denied Fatir's constitutional rights to have counsel present and to have counsel speak on his behalf before sentencing is imposed;

- Grounds Three and Seven—In mandating a sentence of life imprisonment without possibility of parole, § 4209(a) unconstitutionally removes all discretion from the sentencing judge, in violation of due process and separation of powers principles;

- Ground Five—The Delaware Supreme Court's construction of "life imprisonment without benefit of parole" in § 4209(a) as excluding the possibility of reduction in sentence for "good time" credits under §§ 4371 and 4372 violated *ex post facto* principles protected by the due process clause of the Fourteenth Amendment to the Constitution; and

- Ground Six—The imposition of a life sentence enhanced by the *ex post facto* construction just described constituted cruel and unusual punishment in violation of the Eighth Amendment.

As indicated above (and discussed more fully below), the court views Grounds Three and Seven as being essentially identical. Further, Ground Four of the petition does not set forth a separate ground for relief. In Ground Four, Fatir contends that the Delaware Supreme Court erred when it concluded that the resentencing in this case was analogous to a modification or reduction of sentence pursuant to Rule 35(b) of the Delaware Superior Court Rules of Criminal Procedure, which apparently may be accomplished by written order. This is not a separate ground for relief. Rather, the Court's comparison to Rule 35(b) was merely part of its reasoning in rejecting Fatir's argument that he was constitutionally entitled to be present and represented by counsel at his resentencing. *See Hooks v. State,* 429 A.2d 1312, 1314 (Del.1981). Fatir has reasserted those rights in Grounds One and Two of his Petition. His rejection of the Delaware Supreme Court's analogy is therefore

---

5. To avoid confusion, the court will not "renumber" the seven grounds asserted in the petition to match the five distinct claims the court recognizes. Instead, the court will continue to refer to the ground numbers utilized in Fatir's petition.

properly viewed as part of his argument in support of those two grounds.

## III. EXHAUSTION OF STATE REMEDIES

 A federal petition for a writ of habeas corpus may not be granted to a person incarcerated pursuant to a state court judgment unless he has first exhausted remedies that are available in state court. *See* 28 U.S.C. § 2254(b)(1); *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997). To satisfy the exhaustion requirement, the petitioner must "fairly present" his federal claims to state courts before bringing them in federal court. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999) (citations omitted). State remedies are not deemed exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). When an issue has been presented to a state's highest court on direct appeal, however, it need not be reasserted in a state post-conviction proceeding. *See Lambert,* 134 F.3d at 513 (citations omitted).

 If a claim has not been "fairly presented" to the state courts, but state procedural rules bar the petitioner from seeking further relief, the exhaustion requirement is deemed satisfied. *See McCandless,* 172 F.3d at 260; *see also* 28 U.S.C. § 2254(b)(1)(B)(i) (federal relief not barred where "there is an absence of available State corrective process"). Under those circumstances, however, federal courts may not consider the merits of such claims unless the petitioner can establish "cause and prejudice" or a "funda-

mental miscarriage of justice" to excuse his procedural default. *See McCandless,* 172 F.3d at 260 (citing *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *see also Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993).

It is undisputed that Fatir has exhausted state remedies with respect to Grounds One and Two of his petition. Respondents contend that Fatir failed to exhaust his remaining claims, and that those claims would now be procedurally barred by Rule 61(i) of the Delaware Superior Court Rules of Criminal Procedure. *See* Supplement to Answer (D.I.24), at ¶¶ 6–9.[6] They also claim that Fatir has failed to satisfy either the "cause and prejudice" or "miscarriage of justice" exceptions, such that the court may not consider the merits of anything beyond Grounds One and Two of Fatir's petition.

Fatir contends that he has adequately presented to the state courts all of the issues raised in his federal petition. *See* Mem. of Law in Support of Pet. (D.I.3), at 11. However, to the extent the court were to conclude otherwise, Fatir contends that any unexhausted claims would be procedurally barred. *See id.* at 11–12. In that event, Fatir argues that any such procedural default should be excused because he was required to abandon all attacks on his conviction in order to pursue commutation of his sentence. *See id.* at 11–12; Reply (D.I.29) at ¶¶ 52–55.

For the reasons that follow, the court is not convinced by either Fatir's or the Respondents' position with respect to exhaus-

6. More accurately, Respondents contend that Grounds Five and Six are procedurally barred. They contend that Ground Seven raises only a question of state law, and that such claims need not be exhausted but cannot form the basis for federal habeas relief. The court does not agree that Ground Seven raises a state law question. Moreover, Respondents have mischaracterized Grounds Three and Six. They contend that Grounds Three and Four are merely arguments in support of Grounds One and Two. *See* Supplement to Answer, at p. 2 n. 2. As previously noted, that is true of Ground Four, but not of Ground Three. Respondents describe Ground Six as asserting that a non-parolable life sentence is cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at ¶¶ 9, 11. The court's understanding of Ground Six is set forth *supra. See also* Petitioner's Reply (D.I.29), at ¶ 48. For these and other reasons noted below, Respondents' exhaustion analysis was of little value to the court.

tion of Grounds Three/Seven, Five, and Six of the petition.

## A. Were Fatir's Claims "Fairly Presented" to the Delaware Supreme Court?

█ In *McCandless*, the Third Circuit Court of Appeals described what is required to "fairly present" a claim as follows:

> To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. It is not sufficient that a "somewhat similar state-law claim was made." Yet, the petitioner need not have cited "book and verse" of the federal constitution.

*McCandless*, 172 F.3d at 261 (citations omitted). It has also been said that the claim brought in federal court must be the "substantial equivalent" of that presented to the state courts. *Lambert*, 134 F.3d at 513 (citation omitted). Further, "the state court must have available to it the same method of legal analysis as that to be employed in federal court." *Id.; see also Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir.1986) ("Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts." (citations omitted)).

As previously recounted, Fatir has been before the Delaware Supreme Court on four separate occasions—(1) as a party to the consolidated appeals addressing the questions certified in *State v. Spence*, 367 A.2d 983 (Del.1976); (2) on direct appeal of his conviction, *Hooks v. State*, 416 A.2d 189 (Del.1980); (3) on direct appeal of his resentencing to life imprisonment, *Hooks v. State*, 429 A.2d 1312 (1981); and (4) on

appeal from the denial of his motion for post-conviction relief, *Hobbs v. State*, 538 A.2d 723 (Del.1988). If the issues raised in Grounds Three/Seven, Five, and Six of Fatir's petition were "fairly presented" to the Delaware Supreme Court, this could only have occurred in *State v. Spence*.[7]

### 1. Exhaustion of Grounds Three/Seven (Absence of Judicial Discretion Violates Due Process/Separation of Powers Principles)

As noted above, the Court in *Spence* expressly certified the question of the constitutionality of *both* sentences in 11 Del.C. § 4209(a). It is the second sentence of that provision—mandating life imprisonment without parole if the death penalty is deemed unconstitutional—that Fatir challenges in Grounds Three/Seven of his petition. Thus, at first blush, it would seem clear that these issues were "fairly presented" to—indeed, expressly invited by—the Court in *Spence*.

This becomes less clear, however, when consideration is given to a brief filed on behalf of seven of the defendants (including Fatir) in the consolidated cases in *Spence*. After arguing that the mandatory death penalty provision of § 4209(a) was unconstitutional, counsel appeared to concede the constitutionality of the mandatory life imprisonment provision. Specifically, he stated: "We are in good faith unable to ascertain any aspect of unconstitutionality with respect to the second sentence of 11 Del.C. § 4209(a), at least insofar as it relates to the questions raised in the appeal. It would therefore that [sic] the provisions are severable and are able to stand notwithstanding the Supreme Court's decision in *Woodson v. North Carolina*."[8] This concession would seem to cast serious

---

**7.** Of the other appeals, only *Hooks v. State*, 429 A.2d 1312 (Del.1981), addressed sentencing issues: That appeal was clearly limited to the issues raised in Grounds One and Two of Fatir's federal petition. *See* Appellants' Opening Br. in *Hooks*, at 8 ("The defendants moved to vacate the written order asking to be sentenced in open court in the presence of

the defendants and their attorney. This appeal raises only that question.").

**8.** Respondents have not contended that Fatir's present arguments should be deemed waived or otherwise procedurally barred by virtue of this statement.

doubt on whether Fatir can be said to have "fairly presented" to the Court in *Spence* the constitutional challenges to § 4209(a) that he now raises in Grounds Three/Seven of his petition.

■ Nevertheless, the court concludes that these challenges were exhausted in *Spence,* for the following reasons. First, one of the other defendants in the consolidated cases *did* challenge the constitutionality of the mandatory life imprisonment provision of § 4209(a). According to a reply brief filed by the State, defendant Linwood Lee Shields raised two distinct constitutional challenges to that provision.[9] In the one challenge relevant to the instant exhaustion inquiry,[10] Shields argued that mandatory life imprisonment without parole violates the Eighth Amendment for essentially the same reasons that mandatory death sentences do—i.e., he argued that mandatory life imprisonment without parole is qualitatively different from all other sentences and hence requires an individualized determination of sentencing. *See* State's Reply Br. in *Spence,* at 4–5; *see also Woodson v. North Carolina,* 428 U.S. 280, 303–05, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

Second, the constitutionality of the mandatory life imprisonment provision of § 4209(a) was squarely addressed in the State's opening brief in *Spence. See* State's Opening Br. at 10–13. And, in response to Shields' argument noted above, the State reasserted its position in its reply brief. *See* State's Reply Br. at 5. In deciding the issue, the Delaware Supreme Court expressly held that the life imprisonment provision of § 4209(a) was "constitutionally valid as to all defendants." *Spence,* 367 A.2d at 989. There is no suggestion in the Court's opinion that it upheld the constitutionality of the life imprisonment provision as "uncontested" rather than on the merits.[11]

Thus, although Fatir's own brief may not have "fairly presented" the issue to the Court, the issue was fairly presented to the Court, and was addressed by the Court, in a consolidated appeal to which Fatir was a party. It cannot be doubted that if the Court had accepted Shields' argument that the mandatory life imprisonment provision was unconstitutional, Fatir would have benefited from that decision. In light of the Delaware Supreme Court's decision in *Spence,* Fatir was not required to reassert the issues raised in Grounds Three/Seven in state post-conviction proceedings. *Cf. Lambert,* 134 F.3d at 513; *Alford v. Snyder,* No. CIV. 97–679–SLR, 1999 WL 1050068, at *4–5 (D.Del. Nov.3, 1999).

■ The court recognizes that the arguments presented and rejected in *Spence* were couched in Eighth Amendment terms, whereas Grounds Three and Seven of Fatir's petition are couched in "due process" and "separation of powers" terms. *See Lambert,* 134 F.3d at 513 (noting that the state court must "have available to it the same method of legal analysis as that to be employed in federal court"); *Gibson,* 805 F.2d at 138 ("Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts." (citations omitted)). But a petitioner is not required to have cited "book and verse" of the federal constitu-

---

9. Respondents did not submit to the court the brief that Shields apparently filed in the Delaware Supreme Court. Thus, the court's characterization of Shields' arguments are based on the State's reply brief submitted in *Spence.*

10. Shields' second challenge was that imposition of a life sentence without benefit of parole was unconstitutional as applied to him because of his youth.

11. It is true that the Court's analysis of the constitutionality of the life imprisonment provision was brief. *See Spence,* 367 A.2d at 989. However, that brief analysis came only after a lengthy analysis of the unconstitutionality of the mandatory death penalty provision. *See id.* at 985–88; 990–92. Although the unconstitutionality of that provision was not disputed, the Court clearly made an independent determination that it was unconstitutional. *See id.* at 988.

tion to satisfy the exhaustion requirement. *See McCandless,* 172 F.3d at 261 (citations omitted). The substance of Fatir's legal theory asserted in Grounds Three and Seven is that the federal constitution precludes the Delaware legislature from mandating a sentence of life imprisonment without parole. That claim is the "substantial equivalent" of the issue presented to and addressed by the Court in *Spence. See Lambert,* 134 F.3d at 513; *see also McCandless,* 172 F.3d at 261 (noting that a federal claim's "factual and legal substance" must be presented to the state courts in a manner that "puts them on notice that a federal claim is being asserted").

In sum, the court concludes that the Delaware Supreme Court has been "given the opportunity to correct [the] alleged violations of [Fatir's] federal rights." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). As such, Fatir has adequately exhausted state court remedies with respect to the issues raised in Grounds Three and Seven of his petition.

2. *Exhaustion of Grounds Five and Six (Judicial Construction of Life Imprisonment Without Parole as Excluding Possibility of "Goodtime" Credits Violates Ex Post Facto Principles and, as such, Constitutes Cruel and Unusual Punishment)*

■ Fatir's federal claims in Grounds Five and Six, however, have not been "fairly presented" to the Delaware courts. The proper construction of "life imprisonment without benefit of parole" in 11 Del.C. § 4209(a) was undoubtedly at issue in *Spence.* More specifically, Fatir clearly contended that this term should be construed so as to permit sentence reductions based on the "good-time" credit provisions of 11 Del.C. §§ 4371 and 4372. The Delaware Supreme Court considered and rejected that position. *See Spence,* 367 A.2d at 989–90. However, the issue presented and decided in *Spence* was a state law question of statutory construction. The federal constitutional law claims asserted in Grounds Five and Six were neither presented nor decided.

■ As has already been noted, a petitioner need not cite "book and verse" of the federal constitution in order to fairly present a federal claim to the state courts. However, the "factual and legal substance" of the claim must be presented "in a manner that puts them on notice that a federal claim is being asserted." *McCandless,* 172 F.3d at 261 (citations omitted). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

■ In *McCandless,* the Third Circuit Court of Appeals noted that the absence of an explicit reference to federal law does not necessarily mean that a federal claim has not been fairly presented. *See McCandless,* 172 F.3d at 261. Petitioners may also alert state courts that federal claims are being asserted "through (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* (citations omitted). Upon review of the briefs submitted to the Court in *Spence* and the Court's decision, it is clear that the Court was not placed on notice that a federal claim was being asserted with respect to the construction of the statutory phrase "life imprisonment without benefit of parole." As such, Fatir has not "fairly presented" to the state courts the constitutional claims he now asserts in Grounds Five and Six.

## B. Are Fatir's Unexhausted Claims Procedurally Barred?

■ A petition that contains unexhausted but procedurally barred claims in addition to exhausted claims is not a "mixed petition" requiring dismissal. *See McCandless*, 172 F.3d at 260; *Toulson*, 987 F.2d at 987. Respondents contend that Fatir's unexhausted claims would now be procedurally barred by Rule 61(i) of the Delaware Superior Court Rules of Criminal Procedure.[12] Rule 61, however, appears to be limited to challenges to criminal convictions and death sentences. *See* Rule 61(a)(1). Fatir does not challenge his conviction. Although he was originally sentenced to death, that sentence has long ago been vacated. He now challenges his resentencing to life imprisonment without parole. Such challenges appear to be beyond the scope of Rule 61.

Instead, Fatir's unexhausted claims would appear to be governed by Rule 35(a), which provides: "The court may correct an illegal sentence *at any time* and may correct a sentence imposed in an illegal manner within the time provided [in Rule 35(b) ] for the reduction of sentence." Super.Ct.Crim.R. 35(a) (emphasis added). Neither Respondents nor Fatir have provided any analysis of Rule 35. It appears that a sentence that violates *ex post facto* principles protected by the due process clause of the federal constitution (as asserted in Ground Five) or that constitutes cruel and unusual punishment prohibited by the federal constitution (as asserted in Ground Six) would be an "illegal sentence" that could be challenged under Rule 35(a) "at any time." *See, e.g., Defoe v. State*, 750 A.2d 1200, 1201 (Del.2000); *Brittingham v.*

*State*, 705 A.2d 577, 578 (Del.1998); *Marshall v. State*, 723 A.2d 397, 1998 WL 977123 (Del. Nov.20, 1998) (unpublished disposition); *Garnett v. State*, 708 A.2d 630, 1998 WL 184489 (Del. Apr.9, 1998) (unpublished disposition).

■ Unlike Rule 61, Rule 35(a) does not expressly identify any procedural bars to the correction of illegal sentences. Further, even if it appeared to be *unlikely* that the Delaware state courts would reach the merits of Fatir's unexhausted claims, that would not be sufficient to excuse exhaustion. *See Toulson*, 987 F.2d at 988. Rather, "[b]efore exhaustion will be excused, state law must *clearly* foreclose state court review." *Id.* at 987 (emphasis added). Because Delaware law does not clearly foreclose state court review of the merits of Fatir's claims in Grounds Five and Six, exhaustion of those claims cannot be deemed excused.

## C. Denial of Unexhausted Claims Under 28 U.S.C. § 2254(b)(2)

Fatir's petition is therefore a "mixed petition"—i.e., one that includes both exhausted and unexhausted claims. Prior to the enactment of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), mixed petitions were required to be dismissed without prejudice. *See Lambert*, 134 F.3d at 513 (citing *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). After AEDPA, an unexhausted claim may be denied—but not granted—on the merits. *See* 28 U.S.C. § 2254(b)(2); *Lambert*, 134 F.3d at 514. Although the express terms of the statute do not limit the circumstances in which a court may exercise this authority,[13] the Third Circuit Court of Appeals has con-

---

**12.** Fatir agrees with Respondents that any claims deemed unexhausted would now be procedural barred. He contends, however, that any procedural default should be excused because he was required to abandon all attacks on his conviction (and, presumably, his sentence) during the pendency of his requests for commutation. Assuming without deciding that this would excuse Fatir's failure to assert his unexhausted claims in state court from

1988 through 1995 (during which time he was apparently pursuing commutation), it does not excuse his failure to assert them prior to 1988. As previously noted, Fatir was before the Delaware Supreme Court on four separate occasions before 1988.

**13.** The full text of § 2254(b)(2) reads as follows: "An application for a writ of habeas corpus may be denied on the merits, notwith-

cluded that this provision "is properly invoked only when 'it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Jones v. Morton*, 195 F.3d 153, 156 n. 3 (3d Cir.1999) (quoting *Lambert*, 134 F.3d at 515).[14]

■ For reasons set forth below, the court has concluded that it is perfectly clear that Grounds Five and Six do not raise even "colorable" federal claims. As such, the court will exercise its discretion to deny those claims on the merits.[15] Because state court remedies have been exhausted with respect to the other grounds for relief asserted in Fatir's petition, the court can reach the merits of all of Fatir's claims.

## IV. THE MERITS OF FATIR'S ASSERTED GROUNDS FOR RELIEF

### A. Standard of Review

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. *See Williams v. Taylor*, —— U.S. ——, —— – ——, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000) (interpreting 28 U.S.C. § 2254(d)(1)). Under the AEDPA, the court may not issue a writ based on such a claim unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Su-

standing the failure of the applicant to exhaust the remedies available in the courts of the State."

14. Federal courts in other Circuits have recognized similar limitations on the applicability of § 2254(b)(2). *See Oleva v. Bintz*, No. 00 Civ. 1398, 2000 WL 378034, at *3–4 & nn. 9–10 (Apr. 12, 2000) (Magistrate's Report & Recommendation) (collecting cases articulating various standards for the proper use of § 2254(b)(2)).

15. Although the complete absence of merit to Grounds Five and Six makes denial of those claims permissible under the standard adopted in *Lambert*, other factors that, in the court's view, suggest that invocation of

preme Court of the United States." § 2254(d)(1). In *Williams*, the Supreme Court interpreted this provision as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 120 S.Ct. at 1523.

The Court further explained that under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 1522. "Rather, that application must also be unreasonable." *Id.*

With those principles in mind, the court now turns to Fatir's claims.

### B. Grounds One and Two—Right of Defendant to be Present With Counsel and to Allocute at Resentencing

The Delaware Supreme Court correctly identified the Supreme Court jurispru-

§ 2254(b)(2) is appropriate here include: (1) Grounds Five and Six raise purely legal issues—there is no need to develop a factual record; (2) Although Fatir failed to "fairly present" Grounds Five and Six to the state courts as *federal* claims, those claims are wholly dependent on the propriety of the statutory construction that was directly at issue in *Spence;* and (3) Fatir has served over 24 years of the sentence at issue in this case, and has already been before the Delaware Supreme Court four times. It is difficult to see how postponing a decision on the merits of Fatir's claims would serve the interests of justice or the intent of Congress in enacting the AEDPA.

dence [16] relevant to Fatir's claims that he was denied the rights to be present with counsel at his resentencing and the right to allocute before imposition of his final sentence. *See Hooks v. State,* 429 A.2d 1312, 1313 (Del.1981). Specifically, the Court noted that: (1) the constitutional right to have counsel present at sentencing had been recognized in *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); (2) the right of the defendant to be present at sentencing had been recognized in *United States v. Behrens,* 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963); and (3) the right of the defendant to allocute— i.e., to make a statement on his own behalf and to present information in mitigation of punishment—before a final sentence is imposed had been recognized in *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961).[17]

At Fatir's resentencing, however, the Superior Court had "no discretion whatsoever" to deviate from the Delaware Supreme Court's mandate that Fatir be sentenced to life imprisonment without benefit of parole. *Hooks,* 429 A.2d at 1312; *see also Hooks,* 416 A.2d at 193 (noting that the Court in Spence "ruled that the sentence to be imposed in this case for Murder in the first degree is life imprisonment without benefit of parole");

*id.* at 208 n. 10 (noting that resentencing in accordance with *Spence* would be necessary on Fatir's murder conviction); *Hobbs v. State,* 538 A.2d at 723–24 ("[W]e declared [in *Spence*] the mandatory death penalty provision of § 4209 unconstitutional and ordered all death sentences imposed thereunder set aside and the alternative sentence of life imprisonment without parole substituted.").

■ The United States Supreme Court had not (and still has not) concluded that a defendant has the right to be present with counsel, or the right to allocute, at a proceeding in which the sentencing judge has no discretion to deviate from a sentence mandated by a higher court. Further, in light of the Superior Court's complete absence of discretion at Fatir's resentencing, it cannot be said that the Delaware Supreme Court decided Fatir's case differently from a Supreme Court decision involving "materially indistinguishable facts." As such, the Delaware Supreme Court's rejection of Fatir's claim was not "contrary to" clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). *See Williams,* 120 S.Ct. at 1523.

Nor was the Court's rejection of Fatir's claims an "unreasonable application of"

---

**16.** In *Williams,* the Court also clarified what is meant by the phrase "clearly established Federal Law, as determined by the Supreme Court of the United States," as used in 28 U.S.C. § 2254(d)(1). That phrase refers to the *holdings,* but not the *dicta,* of Supreme Court decisions that had been issued as of the time of the relevant state court decision. *See Williams,* 120 S.Ct. at 1523.

**17.** Although it was clearly established that the right to counsel was a constitutional right, the Supreme Court had not clearly established that the rights of the defendant to be present and to allocute were constitutionally based. In *Behrens,* the Court rested the defendant's right to be present on a federal statute not applicable to Fatir, and expressly avoided making a constitutional determination. *See Behrens,* 375 U.S. at 166 n. 4, 84 S.Ct. 295. The right to allocute recognized in *Green* was based on a Federal Rule of Criminal Procedure that codified a right dating back to early

common law. *See Green,* 365 U.S. at 304, 81 S.Ct. 653. The Supreme Court still has not expressly clarified the source of these two rights. *See, e.g., United States v. Faulks,* 201 F.3d 208, 213 (3d Cir.2000) (describing a violation of the Federal Rule of Criminal Procedure that requires the defendant to be present at sentencing as "implicat[ing] constitutional concerns"); *United States v. Tidwell,* 178 F.3d 946, 949 (7th Cir.1999) (dissenting opinion) (describing the defendant's right to allocute as "a bedrock of our constitutional jurisprudence that can trace its lineage to the early common law"); *United States v. Tamayo,* 80 F.3d 1514, 1519 n. 5 (11th Cir.1996) (noting that the Supreme Court has not confirmed the constitutional basis for the right of allocution). The Delaware Supreme Court did not, however, reject Fatir's claims on the basis of this uncertainty. Nor will this court deny Fatir's habeas petition on that basis.

United States Supreme Court precedents. In each of the Supreme Court cases noted above, the Court emphasized the *impact* that the rights being recognized could have on some discretionary decision or determination of substantial rights. *See Mempa,* 389 U.S. at 134–36, 88 S.Ct. 254 (noting that an indigent's right to appointed counsel exists at "every stage of a criminal proceeding where substantial rights of a criminal accused may be affected," and explaining the various ways in which counsel could impact the decisions and rights at issue in the proceeding involved in that case); *Behrens,* 375 U.S. at 163 n. 1, 164–65, 84 S.Ct. 295 (identifying the significant extent of discretion to be exercised at the proceeding at issue, and noting that the "whole point" of the statutory sentencing procedures was to get more detailed information "as a basis for determining the sentence to be imposed"); *Green,* 365 U.S. at 304, 81 S.Ct. 653 (noting that early common law right of allocution was still necessary to afford the defendant the opportunity to personally "present to the court his plea in mitigation").

Moreover, federal appellate courts continue to stress the presence or absence of discretion when faced with questions regarding defendants' rights to be present with counsel and to allocute in various sentencing contexts. *See United States v. Faulks,* 201 F.3d 208, 211–12 (3d Cir.2000) (Becker, C.J.) (remanding for resentencing in the defendant's presence, but only after expressly recognizing the sentencing discretion that the district court had on remand and distinguishing cases in which the resentencing decisions on remand were not discretionary), *United States v. Parker,* 101 F.3d 527, 528 (7th Cir.1996) (Posner, C.J.) (concluding that resentencing the defendant by written order without a new sentencing hearing was not error; noting that a defendant has no right to be present at resentencing where "the case is remanded not for a new sentencing hearing but merely for a nondiscretionary correction of the original sentence"); *United States v. Nolley,* 27 F.3d 80, 81 (4th Cir. 1994) (finding no reversible error where defendant was not represented by counsel at resentencing, where the sentencing court "had no choice but to follow the specific mandate of the appellate court"); *United States v. Barnes,* 948 F.2d 325, 329 (7th Cir.1991) (noting that where imposition of a convicted defendant's sentence was postponed, the right to address the court at the subsequent sentencing hearing "arises precisely because the scope of punishment is not preordained").

At the resentencing of Fatir and his co-defendants, the Superior Court "could do only one thing: sentence each defendant to prison for life without benefit of parole." *Hooks,* 429 A.2d at 1314. Neither Fatir nor counsel could have done or said anything to alter that foregone conclusion. Indeed, this was not merely a situation in which a sentencing judge was faced with a statute mandating a particular sentence. In such a case, the defendant or his counsel could perhaps attempt to convince the sentencing judge that the statute was unconstitutional or that it should be construed to leave room for discretionary exceptions. In Fatir's case, the Delaware Supreme Court in *Spence* had already entertained and rejected such possibilities, and the sentencing judge was not at liberty to conclude otherwise. Under those circumstances, the court cannot conclude that the Court in *Hooks* "unreasonably applied" clearly established federal law by rejecting Fatir's asserted rights to be present with counsel and to allocute at his resentencing.

As such, Grounds One and Two of Fatir's petition must be denied.[18]

**18.** The court recognizes that the rights asserted in Grounds One and Two have value beyond their primary functions of protecting substantive rights and affording opportunities to influence discretionary decisions. As one

court has stated: "Aside from its practical role in sentencing, the right [of allocution] has value in terms of 'maximizing the perceived equity of the process.'" *United States v. Barnes,* 948 F.2d 325, 328 (7th Cir.1991)

## C. Grounds Three and Seven—Absence of Judicial Discretion Violates Due Process/Separation of Powers Principles

In Grounds Three and Seven of his petition, Fatir purports to asserts two distinct constitutional challenges to the mandatory life imprisonment provision of 11 Del.C. § 4209(a). His petition describes Ground Three as: "Sentencing judge exercised no discretion in sentencing. Judge was absent discretion—violative of due process." Ground Seven is identified as: "Petitioner's resentencing violated Separation of Powers clauses of the United States Constitution." Fatir's supporting brief reveals that these two claims advance the same legal theory. *See* Mem. of Law. in Support of Pet. at 20–25 (explaining Ground Three), 36–40 (explaining Ground Seven). According to that theory, judges must be given discretion to impose individualized sentences reflecting factors such as the particularized nature of the offense and the defendant's degree of culpability. When a state legislature strips sentencing judges of their authority to exercise such discretion, such action allegedly violates both due process and separation of powers principles embodied in the federal Constitution. *See id.*

(quoting 3 ABA Standards for Criminal Justice 18–459 (2d ed.1980)).

Indeed, that point was not lost on the Delaware Supreme Court. In a concurring opinion, Chief Justice Herrmann expressed his "disapproval of the delivery of 'justice by mail,' under any circumstances, at the verdict or sentencing stage of a felony case." *Hooks,* 429 A.2d at 1314. He noted that "[s]uch practice engenders ... a misunderstanding and bitterness against 'the system' on the part of a prisoner which we should strive to avoid." *Id.* at 1315. The court concurs in those thoughts. But the writ of habeas corpus is not a tool designed for "maximizing perceived equity" or reducing "bitterness against the system," however admirable those goals may be. Rather, a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Although the Supreme Court has recognized an "individualized sentencing" doctrine, it has strictly limited the application of this doctrine to the death penalty context. *See Harmelin v. Michigan,* 501 U.S. 957, 994–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The Court first adopted the doctrine in *Woodson v. North Carolina,* with the following pronouncement:

> While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Woodson,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (citation omitted).[19] That pronouncement, however, was immediately followed by a passage that is fatal to Fatir's claim:

> This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in

19. Fatir contends that the individualized sentence doctrine was recognized in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The *Williams* Court did indeed make sweeping statements endorsing the wisdom of individualized sentencing. *See id.* at 247–48, 69 S.Ct. 1079 ("The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. This whole country has traveled far from the period in which the death sentence was an automatic and commonplace result of convictions—even for offenses today deemed trivial. Today's philosophy of individualizing sentences make sharp distinctions for example between first and repeated offenders. Indeterminate sentences ... have to a large extent taken the place of the old rigidly fixed punishments." (citations omitted)). But *Williams* in no way adopted individualized sentencing as a constitutional mandate.

its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Id.* at 305, 96 S.Ct. 2978.

■ Within days of the issuance of the decision in *Woodson,* the Delaware Supreme Court consolidated Fatir's case with other cases in which death penalties had been imposed to address the implications of *Woodson* on 11 Del.C. § 4209(a). After consideration of briefs submitted on behalf of the affected parties, the Court struck down the mandatory death provision in § 4209(a). It concluded, however, that the provision for mandatory life imprisonment without benefit of parole was both severable and constitutionally valid as to all defendants. *State v. Spence,* 367 A.2d 983, 988–89 (Del.1976). As already noted, the United States Supreme Court had never reached the "opposite" conclusion. And the above-quoted passage from *Woodson* precludes any argument that a sentence of life imprisonment without benefit of parole is "materially indistinguishable" from the death penalty. Therefore, the decision in *Spence* was not "contrary to" clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). *See Williams,* 120 S.Ct. at 1523.

Moreover, the same passage from *Woodson* precludes a finding that the Court in *Spence* "unreasonably applied" clearly established federal law in upholding the constitutionality of the mandatory life imprisonment provision in 11 Del.C. § 4209. Indeed, it has since become "clearly established" that the Court's decision in *Spence* was not only "reasonable"; it was also correct. *See Harmelin v. Michigan,* 501 U.S. 957, 994–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (expressly refusing to extend the " 'so-called individualized capital-sentencing doctrine' to an 'individualized mandatory life in prison without parole sentencing doctrine.' " (citation omitted)).

■ The fact that Fatir couches his arguments in terms of "due process" and "separation of powers" rather that Eighth Amendment terms does not alter the substance of his claims. The Supreme Court's Eighth Amendment jurisprudence makes clear that what was at issue in its "individualized sentencing" cases was the ability of legislatures to withhold sentencing discretion from the judiciary. The scope of judicial sentencing discretion is generally subject to legislative control. *See, e.g., Harmelin,* 501 U.S. 957, 1006, 111 S.Ct. 2680, 115 L.Ed.2d 836 (concurring opinion) ("It is beyond question that the legislature has the power to define criminal punishments without giving the courts any sentencing discretion. Since the beginning of the Republic, Congress and the States have enacted mandatory sentencing schemes." (citations and internal quotation marks omitted)); *United States v. Mistretta,* 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). To the extent that there are limits on the extent to which state legislatures may withhold sentencing discretion from the judiciary, those limits do not come from generalized due process or separation of powers principles. They come from the Eighth Amendment, as made applicable to the states via the due process clause in the Fourteenth Amendment. *See, e.g., Lockett v. Ohio,* 438 U.S. 586, 603–04, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *see also Ehrsam v. Rubenstein,* 917 F.2d 764, 766 (3d Cir.1990) (rejecting "due process right to individualized sentencing"); *United States v. Vizcaino,* 870 F.2d 52, 53–56 (2d Cir.1989) (same); *United States v. Frank,* 864 F.2d 992, 1009–10 (3d Cir.1988) (rejecting due process and separation of powers challenges to Congress's curtailment of judicial sentencing discretion through the Sentencing Reform Act of 1984). But as indicated above, the Supreme Court has refused to extend

those limits beyond the death penalty context. *See, e.g., Harmelin,* 501 U.S. at 995–96, 111 S.Ct. 2680.

For these reasons Grounds Three and Seven of Fatir's petition must be denied.

### D. Grounds Five and Six—Judicial Construction of 11 Del.C. § 4209(a) Violates Ex Post Facto Principles and, as such, Constitutes Cruel and Unusual Punishment

In Ground Five of his petition, Fatir contends that the Delaware Supreme Court's construction of "life imprisonment without benefit of parole" in § 4209(a) as excluding the possibility of reduction in sentence for "good time" credits under §§ 4371 and 4372 violated *ex post facto* principles protected by the due process clause of the Fourteenth Amendment to the Constitution. In Ground Six, he asserts that enhancing a life sentence in this *ex post facto* manner constitutes cruel and unusual punishment in violation of the Eighth Amendment.[20]

■■■ There are various types of *ex post facto* laws.[21] The type relevant to this case is one that increases the punishment for a crime after it has been committed. *See Collins v. Youngblood,* 497 U.S. 37, 41–43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Helton v. Fauver,* 930 F.2d 1040, 1045 (3d Cir.1991). Fatir challenges the Delaware Supreme Court's 1976 construction of "life imprisonment without benefit of parole." To succeed on that claim Fatir must demonstrate that the Court's statutory construction was unforeseeable and that it

imposed a more burdensome penalty than that which applied at the time he committed his offense. *See Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (noting that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law"); *Helton,* 930 F.2d 1044–48 (unforeseeable judicial construction that increases the penalty imposed for an offense already committed violates *ex post facto* principles).

■■■ Fatir's claim fails for two independent reasons. First, even if the Court's construction of life imprisonment without parole was unforeseeable, it did not increase the penalty over that which applied at the time Fatir committed his offense. Fatir committed his crime in 1975. At that time, the penalty for his offense was a mandatory death sentence. It cannot be argued that the Court's 1976 construction of life imprisonment without parole as excluding reductions for "good time" credits results in a penalty more severe than mandatory death. The fact that the mandatory death provision was *later* determined to be unconstitutional does not negate its existence at the time of the offense.[22] The contrary position has been expressly rejected by the United States Supreme Court:

> Petitioner's second ex post facto claim is based on the contention that at the time he murdered his children there was no death penalty in Florida. This is so, he contends, because the earlier statute enacted by the legislature was, after the

20. Because these federal claims have not been "adjudicated on the merits" in the Delaware state courts, the deferential standard provided for in 28 U.S.C. § 2254(d)(1) does not apply. *See Hameen v. State of Delaware,* 212 F.3d 226, 248 (3d Cir.2000).

21. The *ex post facto* clause of the federal constitution is a limitation on the powers of legislatures. *See Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Nevertheless, Fatir correctly recognizes that the due process clauses of the Fifth

and Fourteenth Amendments protect against judicial constructions that operate in the same manner as *ex post facto* laws. *See id.* (citing *Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)).

22. The unconstitutionality of the mandatory death provision in § 4209(a) became rather evident after the Supreme Court's decision in *Woodson.* That decision, however, was issued more than a year after the time Fatir committed his offense.

time he acted, found by the Supreme Court of Florida to be invalid under our decision in Furman v. Georgia [citation omitted]. Therefore, argues petitioner, there was no "valid" death penalty in effect in Florida as of the date of his actions. But this sophistic argument mocks the substance of the Ex Post Facto Clause. Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder.

*Dobbert v. Florida,* 432 U.S. 282, 297, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Even ignoring this insurmountable hurdle, the Delaware Supreme Court's construction of "life imprisonment without benefit of parole" to mean "confinement for the balance of the life of the person convicted" simply cannot be characterized as "unforeseeable." *State v. Spence,* 367 A.2d 983, 989–90 (Del.1976). Fatir contends that the sentence must be construed to permit sentence reductions pursuant to the "good time" credit provisions of 11 Del .C. §§ 4371 and 4372. But 11 Del.C. § 4209(a) nowhere refers to those provisions. Nor do §§ 4371 and 4372 refer to § 4209(a). Further, none of these provisions give any clue as to how good time credits might be "subtracted" from a sentence of life imprisonment without benefit of parole.

Fatir contends that the answer is found in 11 Del.C. § 4346, entitled "Eligibility for Parole." Subsection 4346(c) provides, in pertinent part, that: "For all purposes of this section [i.e., § 4346], a person sentenced to imprisonment for life shall be considered as having been sentenced to a fixed term of 45 years." Thus, Fatir contends that the term "life imprisonment without benefit of parole" in § 4209(a) must be defined through a provision that, by its terms, applies to determinations of parole eligibility. Even assuming that the Delaware Supreme Court could reasonably have construed § 4209(a) in that manner, its preference for the plain meaning of the words "life imprisonment without benefit of parole" cannot be considered "unforeseeable."

For these two independent reasons, the court concludes that Ground Five does not raise even a "colorable" federal claim. The same is true of Ground Six, which is wholly dependent on the merits of Ground Five. As such, the court will deny those two unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2), as previously noted.

## V. CONCLUSION

For the foregoing reasons, the court will deny Fatir's petition for a writ of habeas corpus. An appropriate order shall be issued in conjunction with this opinion.