**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

No. 22-2480

_____

RICHARD L. LEWIS,
Appellant

v.

WARDEN JAMES T VAUGHN CORRECTIONAL CENTER;
ATTORNEY GENERAL DELAWARE

_____

On Appeal from the United States District Court for the
District of Delaware
District Court No. 1-18-cv-02028
District Judge: Honorable Maryellen Noreika

_____

Argued: July 10, 2024

Before: BIBAS, FREEMAN, RENDELL, *Circuit Judges*.

(Opinion filed: October 2, 2024)

Matthew B. Harvey, Esq. [**ARGUED**]
Morris Nichols Arsht & Tunnell
1201 N Market Street
16th Floor
P.O. Box 1347
Wilmington, DE 19899
*Counsel for Appellants*

Brian L. Arban, Esq. [**ARGUED**]
Office of Attorney General of Delaware
Delaware Department of Justice
820 N French Street
Carvel Office Building
Wilmington, DE 19801
*Counsel for Appellees*

_____

OPINION*

_____

RENDELL, *Circuit Judge*.

Petitioner-Appellant Richard Lewis brings this habeas petition alleging ineffective assistance of appellate counsel due to counsel's failure to present constitutional and statutory challenges to the admission of out-of-state GPS tracking evidence. While the applicable *Strickland* standard has two prongs, we can decide this case by examining only the prejudice prong and employing the deferential standard that governs our habeas review of state court rulings. Accordingly, we conclude that it was not contrary to or an unreasonable application of clearly established federal law for the Delaware Supreme Court to find that Lewis was not prejudiced by the failure of appellate counsel to raise the out-of-state monitoring argument. The outcome of the direct appeal is not likely to have changed if counsel had made the challenges to the admission of out-of-state GPS tracking evidence because there was ample other admissible evidence in both the search warrant

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

and at trial with which a jury could find Lewis guilty. Thus, Lewis cannot meet *Strickland*'s ineffective assistance of counsel standard, and we will affirm.

I

A

In 2015, a string of nighttime residential burglaries and attempted burglaries occurred in wealthy neighborhoods in Wilmington, Delaware. The suspect entered through unlocked doors and windows and, wearing gloves and a hooded sweatshirt pulled around his face, loaded high-value items into a pillowcase. The execution of the 2015 burglaries was strikingly similar to those Lewis was convicted of in 1978, 1981, 1993, and 2007.

New Castle County Police Detective DiNardo was assigned to investigate the burglaries. The affidavit of probable cause noted that a white Lexus, believed to belong to Lewis, had been seen driving through a neighborhood near the location of a recent burglary, and it described contact with a detective from Pennsylvania who had investigated a Richard Lewis in connection with a residential burglary in Pennsylvania in 2003. The Delaware Superior Court granted the warrant. The warrant instructed that the GPS be installed in Delaware and was silent on whether it granted monitoring outside of Delaware.

Through the initial warrant and a series of extensions, New Castle County police tracked Lewis through Delaware, Pennsylvania, New Jersey, and New York, and eventually learned that he was selling stolen jewelry at a Manhattan jewelry store called Metals NY. Police obtained search warrants for Lewis's residence, vehicles, and storage

unit and executed these warrants on October 16, 2015. From those searches, police seized jewelry, electronics, a lambskin rug, binoculars, and a painting they believed to be stolen. Soon after, Lewis was arrested for eight burglaries involving multiple victims and locations in New Castle County, Delaware.

Lewis's trial counsel moved to suppress the extraterritorial GPS tracking and evidence flowing therefrom as fruit of the poisonous tree, and the motion was initially denied as untimely. Lewis's first trial in June 2015 resulted in a mistrial. Before the second trial, the trial court held a hearing on Lewis's suppression motion, which raised statutory and constitutional challenges to the extraterritorial tracking and evidence derived from it. The trial court repeatedly avoided discussing or deciding the constitutional challenge to extraterritorial tracking, and instead relied on the attenuation doctrine to deny the suppression motion.

At trial, Lewis was convicted on all counts and sentenced as a habitual offender to a total of twenty-six years of incarceration.

B

***Direct Appeal.*** Lewis timely appealed his conviction to the Delaware Supreme Court and was appointed appellate counsel. Appellate counsel raised two main arguments: first, that the affidavits in support of the search warrants for GPS monitoring did not create probable cause; and second, that the Delaware Superior Court lacked jurisdiction to authorize GPS tracking outside of Delaware. The second argument incorporated arguments that extraterritorial monitoring violated Lewis's constitutional rights under both the Delaware and U.S. Constitutions. The Delaware Supreme Court

4

affirmed Lewis's convictions and sentence. It held that probable cause existed for the installation of the GPS. Regarding his second argument, the Delaware Supreme Court held that Lewis had waived his constitutional arguments.

***State Habeas Petition.*** In December 2018, Lewis filed a pro se motion for post-conviction relief pursuant to the Delaware Rules (a Rule 61 Proceeding). Counsel was appointed to assist Lewis. Lewis urged that both his trial and appellate counsel were constitutionally ineffective for failing to properly litigate the suppression issue as it related to out-of-state GPS monitoring. Lewis also urged that appellate counsel needed to "challenge [the Superior Court's] reliance on the attenuation doctrine and independent source doctrine to deny the motion to suppress." App. 646. In support of Lewis's Rule 61 proceeding, appellate counsel submitted an affidavit conceding without elaboration that he did not raise the out-of-state GPS monitoring issue or the Court's reliance on the attenuation and independent source doctrines.

The Superior Court denied Lewis's motion on the merits, applying *Strickland* and noting that the "Delaware Supreme Court has declined to rule on the admissibility of extra-territorial GPS signals several times," and thus it was "not convinced that prior counsel's representation falls below a standard of reasonableness [when] counsel fails to litigate an issue of first impression." *State v. Lewis*, No. 1510009348, 2021 WL 1118114, at *3-4 (Del. Super. Ct. Mar. 23, 2021). It also found an absence of prejudice under *Strickland*. It first determined that "[n]either [caselaw] nor the Fourth Amendment support the proposition that data produced in a different jurisdiction is somehow off-limits to law enforcement when it is received pursuant to a lawfully issued warrant." *Id.* at *5. Thus, it explained that even if

5

counsel had effectively raised the out-of-state GPS data issue, "the issue would not have been decided in [Lewis's] favor and he therefore suffered no prejudice." *Id.*

The Delaware Supreme Court affirmed the judgment of the Superior Court in January 2022. It held that neither trial nor appellate counsel performed deficiently under *Strickland*, also noting that neither it nor the United States Supreme Court has provided guidance on the extraterritorial monitoring issue and that appellate counsel did not have a duty to "anticipate changes in the law." *Lewis v. State*, 271 A.3d 188 (Table), 2022 WL 175771, at \*4 (Del. Jan. 20, 2022). It agreed with the Delaware Superior Court and found a lack of prejudice because Lewis could not demonstrate that he would have prevailed on his suppression motion given the lack of law supporting his argument regarding extraterritorial GPS monitoring.

***Federal Habeas Petition.*** While his state motion for post-conviction relief was pending, Lewis filed his initial habeas petition pursuant to 28 U.S.C. § 2254 in the District of Delaware. After Lewis's state motion was adjudicated, the District Court reviewed and denied Lewis's petition. *Lewis v. May*, No. 18-cv-2028, 2022 WL 2966432, at \*1 (D. Del. July 27, 2022). On the ineffective assistance of appellate counsel claim, the District Court concluded that the Delaware Supreme Court's decision denying post-conviction relief "was not contrary to clearly established federal law" either in how it applied *Strickland* or in finding an absence of deficient performance or prejudice. *Id.* at \*4, \*6. The District Court explained:

> Given the absence of applicable Supreme Court or Delaware Supreme Court precedent on the issue, Petitioner cannot demonstrate a reasonable probability that the outcome of his trial and appeal would have been

6

different but for trial and appellate counsel's failure to argue that the Delaware police cannot track someone outside the state of Delaware pursuant to a validly issued GPS warrant.

*Id.* at *5.

On April 6, 2023, we granted Lewis a certificate of appealability as to the following issue: whether appellate counsel was ineffective for failing to present constitutional or statutory challenges to the admission of out-of-state GPS evidence.

## II[1]

Because no evidentiary hearing was held, our review of the District Court's ruling is plenary, and we analyze the Delaware Supreme Court's decision using the same standard as the District Court. *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). We review the District Court's factual findings for clear error, *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997), and we presume that the state court's determinations of factual issues are correct, 28 U.S.C. § 2254(e)(1).

In *Strickland*, the Supreme Court articulated a two-part test for evaluating a claim for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness." *Id.* at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id.* at 689. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

---

[1] This is a habeas corpus appeal brought under 28 U.S.C. § 2254. On April 6, 2023, this Court granted Lewis a certificate of appealability under 28 U.S.C. § 2253(c). Accordingly, this Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

reasonable professional assistance." *Id.* Second, the petitioner must demonstrate that counsel's ineffective performance caused prejudice. *Id.* at 687. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

When a federal habeas petition relitigates a claim that a state's highest court has adjudicated on the merits, the federal court must review the claim under the deferential standard set forth in 28 U.S.C. § 2254(d). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the State court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *Richter*, 562 U.S. at 98-101.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of clearly established federal law occurs when

8

a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Here, Lewis could only satisfy the "unreasonable application" prong "by showing that 'there was no reasonable basis'" for the Delaware Superior Court's decision. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (cleaned up).

### III

In *Strickland*, the Supreme Court explained that a court may choose to address the prejudice prong of the *Strickland* test before the deficient performance prong and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *Strickland*, 466 U.S. at 697. We do so here and conclude that the state court's ruling to that effect was not an unreasonable determination.

The second prong of the *Strickland* test requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Even if we assume Lewis is right that appellate counsel should have raised the constitutional argument regarding the out-of-state GPS monitoring and was therefore deficient, he cannot demonstrate he was prejudiced by counsel's failure to do so.

"[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. But here, Lewis's verdict has overwhelming record support. The warrants for searching his residence, vehicles, and storage unit would have still been supported by probable cause.

9

The following information in the warrant was not obtained pursuant to the extraterritorial monitoring and would still be included:

- Several burglaries and attempted burglaries were committed between April and June 2015 at Wilmington residences within 2 miles of each other.

- The burglaries reflected Lewis's "cat burglary" modus operandi (MO) (i.e., entering homes and placing jewelry and other expensive items in a pillowcase).

- Lewis was convicted of several burglaries in New Castle County in 1993 using a similar "cat burglary" MO.

- A victim of one of the incidents saw the burglar and described his physical features, which generally matched Lewis's.

- Officers obtained video surveillance from a business complex and park that backs up to one of the burgled properties. The surveillance footage from June 7—the date of one of the reported burglaries—depicted a light-colored sedan parking around 3 am, and the driver is seen running back to the car with a bag or pillowcase over his shoulder at 5 am.

- Footage from the same business park dated June 17 depicted what appeared to be the same vehicle arriving around 4 am and depicted two individuals exiting the vehicle and heading toward the residential area. Officers had responded to a nighttime occupied burglary the night of June 16 in the same area.

- Officers had sent a request for information to nearby investigators in Southeast Pennsylvania and received a tip about Lewis burglarizing affluent homes in

10

Southeast Pennsylvania using the same "cat burglary" MO and was incarcerated for these offenses between May 2007 and April 2013.

- Delaware police had been investigating unsolved burglaries that had occurred since Lewis's release from PA prison in 2013, including one that occurred in August 2014 where suspects entered through an unlocked door and stole jewelry, a purse, and a credit card from a Wilmington home.

- Lewis's address was registered with probation and parole officers, and he had been observed leaving and entering that address.

- In-state GPS showed that Lewis's vehicle visited the affluent Highlands neighborhood of Wilmington in early July and when an officer responded to the area, he saw Lewis's vehicle make an abrupt u-turn in the middle of the block.

- The GPS showed that Lewis returned to the same neighborhood around the same time (around 3 am) in late July. On this occasion, the responding officer observed Lewis's vehicle and positively identified Lewis in a hoodie with what appeared to be binoculars. One of the identifying features was Lewis's limp. Another officer also observed Lewis enter the vehicle, make multiple u-turns, and turn the vehicle's headlights off.

- The GPS tracked, and officer observation confirmed, that Lewis drove to the Sentinel Self Storage center in Stanton, Delaware on multiple occasions.

11

- Surveillance footage and information from security at a Delaware casino confirmed Lewis went to the casino in August operating a brown Ford Explorer.

- Officers observed the Ford Explorer enter the Sentinel Self-Storage center in August and confirmed Lewis was the driver.

- GPS data confirmed that the Ford Explorer visited the storage unit on multiple occasions.

All the above evidence in the warrants is sufficient on its own to support probable cause to execute the search of his home, vehicles, and storage unit. The above evidence also connects Lewis's MO to that of the suspect and places Lewis in the neighborhoods where the burglaries occurred, oftentimes with incriminating behavior such as using binoculars to look into homes or driving erratically within sight of the officers. And during the execution of these valid search warrants, officers recovered stolen handbags, watches, and jewelry from Lewis's residence, stolen jewelry, binoculars, watches, and electronics in his storage unit, and a stolen rug in his girlfriend's car. This, along with the surveillance footage and the two eye-witness identifications at trial, is enough to defeat Lewis's argument on *Strickland*'s prejudice requirement that there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance.

Thus, even if evidence of the out-of-state monitoring and the evidence derived from it had been excluded, there was still enough there to establish probable cause for the search warrants of Lewis's residence, vehicles, and storage unit. And at trial, the other

evidence of Lewis's guilt would support a finding of harmless error here. Together, all this defeats Lewis's argument that counsel's failure to object to the out-of-state monitoring evidence had a substantial likelihood of prejudicing the outcome of his trial. The Delaware Supreme Court correctly applied *Strickland* in determining that Lewis was not prejudiced by appellate counsel's alleged deficiency.

IV

For the reasons stated above, we will affirm.